Riss & Co., Inc., Appellant, *v.* Bowers, Tax Commr., Appellee. (Six cases.)*

---

*The opinions in these appeals by Riss & Co., Inc., from decisions of the Board of Tax Appeals follow in chronological and numerical order, the opinion in cases Nos. 6552, 6553, 6554 and 6555 appearing on page 431, the opinion in case No. 6557 appearing on page 444, and the opinion in case No. 6558 appearing on page 461. The headnotes and syllabus are for the three opinions, collectively or separately, appearing immediately thereafter. Counsel in the cases containing such opinions are listed only once.

A motion to certify the record in case No. 6557 was overruled, March 7, 1962.

430

(Nos. 6552, 6553, 6554 and 6555—Decided September 7, 1961.)

*Messrs. George, Greek, King & McMahon* and *Mr. Kiehner Johnson*, for appellant.

*Mr. Mark McElroy*, attorney general, and *Mr. Joseph L. White*, for appellee.

BRYANT, J.  In six cases pending in this court, Riss & Company, Inc., appellant, herein called Riss, has challenged the validity of the Ohio Highway Use Tax Law, being Sections 5728.01 to 5728.15, inclusive, of the Revised Code, and the applicability of this law to vehicles operated by Riss on Ohio highways during the period starting October 1, 1953, when this law went into effect, and ending December 31, 1956.

Four of the six cases will be considered and decided in this opinion.  In this court they are known as cases numbers 6552 to, and including, 6555.  All are appeals from the Board of Tax Appeals, herein called the board, from decisions and entries by the board affirming a final order of the Tax Commissioner affirming, on rehearing, assessments for highway use tax.  Although bearing separate numbers, these four cases were consolidated both for hearing, briefs and decision before the board and have been briefed and argued together in this court.  Because of that, it was felt that the issues in these four cases can be adequately considered in one opinion.

Case No. 6557, on the other hand, involves questions arising on appeal to this court from a decision of the board affirming a final order of the Tax Commissioner rejecting and refusing an application for refund of highway use taxes previously paid by Riss, while case No. 6558 also is an appeal from a board decision which affirmed the action of the Tax Commissioner with reference to the failure of Riss to post an appeal bond and re-

lated questions, both of which cases were separately briefed. They will not be discussed in this opinion—The opinion in 6557 follows on page 444, and the opinion in 6558 appears on page 461.

The Highway Use Tax Law was enacted by the One Hundredth General Assembly of Ohio as Amended Substitute House Bill No. 619 (125 Ohio Laws, 369), effective July 16, 1953, imposing, beginning on October 1, 1953, a graduated tax on commercial cars and tractors with three or more axles, the tax ranging from one-half cent to two and one-half cents for each mile traveled on Ohio highways.

In our case No. 6552 (Board of Tax Appeals No. 42608, Assessment D-20,870), the basic highway use tax assessment is $14,581.70, the penalty (conditionally remitted), $2,187.26—total $16,768.96—and the audit period involved is October 1, 1956, to December 31, 1956.

In our case No. 6553 (Board of Tax Appeals No. 42,607, Assessment D-20,178), the basic highway use tax assessment is $35,929.90, the penalty (conditionally remitted), $5,389.49—total $41,319.39—and the audit period involved is July 1, 1956, to September 30, 1956.

In our case No. 6554 (Board of Tax Appeals No. 42,606, Assessment C-20,672), the basic highway use tax assessment is $52,507.52, the penalty (conditionally remitted), $7,876.13—total $60,383.65—and the audit period involved is October 1, 1955, to December 31, 1955.

In our case No. 6555 (Board of Tax Appeals No. 42,605, Assessment C-20,332), the basic highway use tax assessment is $47,279.99, the penalty (conditionally remitted), $7,092—total $54,371.99—and the audit period involved is July 1, 1955, to September 30, 1955.

We are not concerned in the four cases being discussed in this opinion with the highway use tax allegedly incurred by Riss in the period between October 1, 1953, and June 30, 1955, as to which the mileage was fully reported and the highway use tax paid by Riss, as this is the subject of a claim for reimbursement in the amount of $233,229.83, which has been appealed to this court and bears case No. 6557.

Nor are we concerned in this opinion with the highway use tax allegedly incurred by Riss in the period between January 1, 1956, and June 30, 1956, reports of which, disclosing mileage

and alleged tax liability in the amount of $108,502.45, were filed, but no payments were made, resulting in an assessment against Riss in that amount and which is the subject of an appeal to this court in case No. 6558.

In the petitions for reassessment filed with the Tax Commissioner by Riss in each of the four cases here under consideration (after it had been notified of the original assessments by the commissioner), Riss advanced four grounds or reasons why the assessments should be set aside. The first of these related to claimed violations of the United States Constitution by the Highway Use Tax Act and, in particular, to the following provisions of the federal Constitution: (1) Clause 3, Section 8, Article I (Commerce Clause); (2) Section 10, Article I (state law impairing the obligation of contracts); and (3) the Fourteenth Amendment (equal protection of the laws).

The second ground included five alleged conflicts of the Highway Use Tax Law with the Constitution of Ohio, including Sections 2 and 16 of Article I, Sections 26 and 28 of Article II and Section 5 of Article XII.

The third ground claimed the Highway Use Tax Law was rendered totally invalid when exemptions from the tax were granted to Michigan-based trucks traveling in Ohio. This exemption followed a decision of the Supreme Court of Ohio on July 27, 1955, in the case of the *Interstate Motor Freight System* v. *Bowers, Tax Commr.*, 164 Ohio St., 122, holding that the Ohio-Michigan Reciprocity Agreement of 1937 granted Michigan-based truckers exemption from the highway use tax.

The fourth ground was the claim that the Highway Use Tax Act was inseparable and was rendered inoperative by the exemption of any carriers.

In the file of the Department of Taxation, in case No. 6555 (Board of Tax Appeals No. 42,605, Assessment C-20,332), there is a memorandum at the top of which appear the four assessment numbers in each of the cases here under consideration. This memorandum states that counsel for Riss "claims reciprocity on equipment operated in Ind., Ill., Mich. and Mo. and licensed in the various states."

The Tax Commissioner on rehearing conditionally remitted the penalties if the tax were paid at a time specified, but otherwise reaffirmed the assessment of the basic tax in the original amount in each case.

In the notices of appeal from the Tax Commissioner to the board in each of the four cases, the first and second errors assigned claimed the highway use tax violated provisions of the federal and state Constitutions, specifying the same constitutional provisions as those mentioned in the petition for reassessment filed with the Tax Commissioner.

However, the third ground cited to the Tax Commissioner, namely, the granting of exemption to Michigan-based motor carriers, and the fourth ground cited to the Tax Commissioner, as to the inseparability of the Highway Use Tax Law, were dropped and in their place new grounds were set forth.

The third error assigned in the appeal to the board was that the entire law was rendered invalid by the amendment of Section 5728.13, Revised Code, effective October 13, 1955 (126 Ohio Laws, 1009), to exempt from the tax "motor vehicles, commercial cars, or commercial tractors owned by nonresidents of this state while engaged solely in the interstate transportation of household goods in Ohio."

The fourth error was that Riss was exempt from payment of the tax "by reason of reciprocity which existed between the state of Ohio and the various states out of which the appellant operates."

The matter was set down for hearing before hearing officers of the board on March 29, 1960, at which time Riss presented the testimony of Ivan E. Moody of Kansas City, Missouri, chief counsel for Riss and head of the legal, commercial and insurance departments of that corporation. From Mr. Moody's testimony it appears that Riss has been in business since 1927 and that it has been incorporated successively under the laws of Colorado, Delaware and Missouri.

During 1956 it apparently was incorporated under the laws of Delaware, and prior thereto for many years had been incorporated under the laws of Colorado. At the time of the hearing in 1960, Riss apparently had left Delaware and become incorporated in Missouri.

It is reasonable to assume that for the audit period of cases Nos. 6554 and 6555, covering the last half of 1955, Riss was a Colorado corporation, while for the audit period of cases Nos. 6552 and 6553, covering the last half of 1956, or at least some part thereof, Riss was a Delaware corporation.

Moody also testified that at all times pertinent to all four cases, Riss maintained its principal office in Kansas City, Missouri; that Riss employs between five and six hundred persons in 23 states; that, in addition to the principal offices in Missouri, Riss, during 1955 and 1956, had ''active offices'' in Massachusetts, New Jersey, Pennsylvania, Maryland, New York, West Virginia, Ohio, Michigan, Indiana, Illinois, Oklahoma, Texas, Colorado, Nebraska, Virginia, Kentucky and, for part of 1956, in Connecticut; that Riss is authorized to move freight in interstate commerce by the Interstate Commerce Commission and is the holder of a certificate from that commission, MC-200, under which there are 203 subnumbers; that the company operates in a large area and considers itself ''primarily a general commodity carrier''; that Riss transports crated household goods, kitchen equipment, household and plumbing appliances and personal effects; and that he (Moody) did not have any evidence or exhibit as to vehicles claimed to be exempt from the tax or could he give any specific information by vehicle as to ''where it was licensed, and in what state it was domiciled and the miles that it traveled for that particular period.''

Mr. Moody testified that during the third quarter of 1955 vehicles operated by Riss predominately were domiciled in Missouri, Connecticut, Pennsylvania and New York, and he testified as to claimed ratios between the mileage traveled by such vehicles in earlier periods in 1955 with the periods here under consideration in cases Nos. 6554 and 6555. There was a complete absence of testimony as to where any particular vehicle operated by Riss was licensed, if at all, where it was certificated, where the owner of the vehicle resided, where its title was recorded, where it was based or whether it was owned by Riss.

In the journal entry of the board it was stated that for the four quarterly audit periods involved in these cases Riss filed ''proper Ohio highway use tax returns, but paid no tax thereon.'' As the four cases had been consolidated before the board, there was a single final entry which in part reads as follows:

''Appellant [Riss] * * * prays that this board declare Revised Code Sections 5728.01 to 5728.14, inclusive, unconstitutional and that the highway use tax assessments made against appellant be found to have been erroneously and unlawfully made and that the appellant is exempt from paying said tax.''

"Upon a consideration of the testimony and evidence in this case, the Board of Tax Appeals is unable to find that said assessments * * * have been erroneously or unlawfully made.

"As to the constitutional question, it is noted that the Board of Tax Appeals of Ohio is an administrative agency and is without jurisdiction to determine the constitutional validity of a statute. See *Kresge Co: v. Bowers*, 170 Ohio St., 405. We must and do, assume that all sections of the Revised Code are constitutional enactments. * * *

"With respect to the claim of appellant that the mileage traveled by some of its vehicles in Ohio in the third and fourth quarters of the year 1955 is exempt from the Ohio highway use tax by virtue of certain reciprocity agreements between Ohio and other States, it is noted that there have been no alleged reciprocity agreements introduced into evidence, nor has there been any competent evidence offered to show the specific vehicles alleged to be tax exempt or to show the number of miles traveled over Ohio highways by such alleged tax-exempt vehicles. Without such evidence before it, this board is powerless to ascertain if there is merit to appellant's claims. It would seem to be an elementary proposition that the Board of Tax Appeals has no authority to take judicial notice of a contract or agreement entered into by a reciprocity board of the state of Ohio and a reciprocity board of some other state. However, even if the alleged agreements had been introduced into evidence and even if said agreements did provide for Ohio highway use tax exemption for trucks licensed and certificated in foreign states, there is nothing in the record before us to show what trucks traveled what miles in Ohio.

"The final orders of the Tax Commissioner must be, and hereby are, affirmed."

With the exception of the Board of Tax Appeals case numbers, the notices of appeal from the board to this court are identical in all four cases and set forth four alleged errors from the board to this court as follows:

"Said decision and order of the board is erroneous, unlawful, and unreasonable in the following respects:

"(1) Sections 5728.01 to 5728.14, Revised Code, are null and void and in violation of the provisions of the Constitution of the United States and without limiting the foregoing in vio-

lation of the following specific provisions of the Constitution of the United States; (a) Article 1, Section 8, Clause 3; (b) Article 1, Section 10; (c) Amendment XIV to the Constitution of the United States.

"(2) Sections 5728.01 to 5728.14 of the Revised Code are null and void and in violation of the provisions of the Constitution of the state of Ohio and without limiting the foregoing in violation of the following specific provisions of the Constitution of the state of Ohio; (a) Article 1, Section 2; (b) Article 1, Section 16; (c) Article II, Section 26; (d) Article II, Section 28; (e) Article XII, Section 5.

"(3) Sections 5728.01 to 5728.14 of the Revised Code are null, void and inoperative in their entirety as applied to appellant in that the provisions applying to the exemption for household goods carriers are unreasonable and unlawful in respect to the appellant, who uses the same roads in Ohio as do the household goods carriers.

"(4) Appellant is exempt from the payment of the within tax by reason of reciprocity which existed between the state of Ohio and the various states out of which the appellant operates.

"Wherefore, appellant prays for a determination by the Court of Appeals of the unconstitutionality of Sections 5728.01 to 5728.14, inclusive, of the Revised Code of Ohio, and that the appellant is exempt from paying the said tax, and that the aforementioned order of the Board of Tax Appeals is unreasonable and unlawful, and that the same should be set aside."

We shall give consideration to the four errors claimed above in the order therein set forth and will consider together the first two errors. In them, Riss contends the Highway Use Tax Law violates the provisions of the federal and state Constitutions and therefore is null and void.

These constitutional objections were raised at the time of the hearing before the Board of Tax Appeals but it held that it was without authority to pass upon constitutional questions. We concur in that determination by the board. See *McCreary* v. *Bowers, Tax Commr.*, 106 Ohio App., 445 (appeal dismissed in *McCreary* v. *Bowers, Tax Commr.*, 168 Ohio St., 64), where the third paragraph of the syllabus reads as follows:

"The Board of Tax Appeals is a creature of statute and has no jurisdiction to pass on the constitutionality of a taxing statute."

We have examined the briefs of appellant with care and are unable to find therein any reference whatsoever to the alleged violations of the federal or state Constitutions as specified in the first and second grounds. There is simply an absence of any discussions of these points, which, we believe, is fatal to the contentions of the appellant. Section 2505.21, Revised Code (126 Ohio Laws, 56, 58), so far as here pertinent, provides as follows:

"Errors not specifically pointed out in the record and separately argued by brief may be disregarded, * * *."

In 3 Ohio Jurisprudence (2d), 482, Section 564, it is said:

"Errors not treated in the brief, even though assigned in the assignment of errors, will ordinarily be regarded as having been abandoned."

This view has been adopted by the Supreme Court of Ohio, in the case of *Uncapher.* v. *Baltimore & Ohio Rd. Co.*, 127 Ohio St., 351, the first paragraph of the syllabus holding as follows:

"The Supreme Court of Ohio is not obligated to search the record for error that is not indicated in the brief or oral argument of counsel for the complaining party, notwithstanding the assignments contained in the petition in error."

From what has been set forth above, it is clear that appellant by not discussing or referring to the constitutional grounds in his briefs has completely abandoned those grounds and has rendered it unnecessary for this court to pass upon them.

Even if this were not so, there is a further reason why we would be inclined to overrule the constitutional objections and that is that this Act has on several occasions been held to be constitutional, in the face of claims to the contrary in cases decided by the Supreme Court of Ohio and the Supreme Court of the United States.

Numerous constitutional objections were raised in an early highway use tax decision, *Interstate Motor Freight System* v. *Bowers, Tax Commr., supra* (164 Ohio St., 122), but the relief sought by Interstate was granted on other grounds, and the court refused to pass on the constitutional questions.

However, a short time later, the Supreme Court of Ohio upheld the constitutionality of the law, and the United States Supreme Court dismissed the appeal and later denied a rehearing in the case of *Geo. F. Alger Co.* v. *Bowers, Tax Commr.*, 166

Ohio St., 427; appeal dismissed, 358 U. S., 43, 3 L. Ed. (2d), 43, 79 S. Ct., 21, rehearing denied, 358 U. S., 901, 3 L. Ed. (2d), 151, 79 S. Ct., 218.

In the *Alger case, supra,* the constitutionality of the Ohio Highway Use Tax Law was the first of three questions considered by the court. It was argued that the tax was discriminatory because it exempted from the tax vehicles with only two axles and did not evenly graduate the tax on trucks with more than two axles, the Supreme Court of Ohio citing in answer to the latter contention the decision of the United States Supreme Court in *Capitol Greyhound Lines* v. *Brice, Commr.,* 339 U. S., 542, 546, 94 L. Ed., 1053, 70 S. Ct., 806, where it was said:

"Complete fairness would require that a state tax formula vary with every factor affecting appropriate compensation for road use. These factors, like those relevant in considering the constitutionality of other state taxes, are so countless that we must be content with 'rough approximation rather than precision.' "

The Ohio Supreme Court opinion (166 Ohio St., 427) stated that in its opinion there was no discrimination between interstate and intrastate commerce "since the same formula is applied to both forms of commerce," after which, at page 429, the Ohio Supreme Court said:

"We having determined that the tax imposed here bears a reasonable relationship to the purpose for which it was created, does not impair interstate commerce and is not discriminatory, it follows that it is a valid exercise of the taxing power."

In the case of *Kaplan Trucking Co.* v. *Bowers, Tax Commr.,* 168 Ohio St., 141 (certiorari denied by the United States Supreme Court in 359 U. S., 927, 3 L. Ed. [2d], 629, 79 S. Ct., 606), it was contended that the tax was administered in such a way as to make it unconstitutional as being discriminatory, but the Ohio Supreme Court concluded that it was "not unconstitutional, and the judgment of the Court of Appeals must be affirmed." See, also, *McCreary* v. *Bowers, supra* (106 Ohio App., 445), upholding the constitutionality of the Act, in which an appeal to the Supreme Court of Ohio was dismissed for want of debatable constitutional question in *McCreary* v. *Bowers, supra* (168 Ohio St., 64).

For the reasons above set forth, we conclude that the first

and second assignments of error made on behalf of Riss on the grounds of the alleged unconstitutionality of the Highway Use Tax Law are not well taken and must be overruled as to each of the four cases.

The third assignment of error, above set forth, relates to the alleged unconstitutional effect of Section 5728.13, Revised Code, *supra*, as amended effective October 13, 1955, granting an exemption from the tax to truckers while engaged exclusively in hauling household goods in interstate commerce on Ohio highways.

In case No. 6555, the audit period for the assessment was from July 1, 1955, to September 30, 1955, and at no time during that period was the household goods exemption in effect, and for this reason, we feel that the third assignment of error as to case No. 6555 is not well taken and must be overruled.

As to the other three cases, it appears clear from the record that Riss does carry some household goods, and it is not contended that this exemption would not be available to Riss at any time when one of its vehicles was so operated as to meet the terms and conditions of Section 5728.13, *supra*, and we, therefore, conclude that no discrimination against Riss has been shown.

While it is doubtful whether any benefit would accrue to Riss if this provision were declared to be unconstitutional and likewise whether any detriment would be sustained by Riss if it be not declared unconstitutional, we shall nevertheless consider the question as to whether there is a reasonable basis upon which the General Assembly relied in making this exemption.

In the *Alger Company case, supra* (166 Ohio St., 427), at page 429, the Ohio Supreme Court in a *Per Curiam* opinion says:

"* * * There cannot be any question that the use of heavy trucks on highways substantially increases the deterioration of such highways, and it is certainly a reasonable exercise of the taxing power to impose a special tax on the persons causing such increased deterioration."

Earlier in the opinion in the same case (page 428) the Supreme Court of Ohio, in discussing claims on behalf of the appellant as to the relative effects on the highways of the various types of trucks, said of this argument that, "although inter-

esting, [it] is one which would have better been directed to the General Assembly." The court then in discussing another exemption—trucks with only two axles—said as follows (page 428):

"* * * It is axiomatic that the General Assembly in imposing a tax has the power to make reasonable classifications therein exempting from the tax persons who in some other way contribute their share to the maintenance of the operation for which the tax is imposed. In relation to the highway use tax, it was evidently the opinion of the General Assembly that the owners of trucks with only two axles carried their fair share of the cost of the operation and maintenance of highways through the imposition of the other motor vehicle taxes. It further must have determined that the relative damage to the highways increased proportionately with the number of axles. *All these are questions of fact which must be determined by the General Assembly, and, its determination being neither unreasonable nor arbitrary, the court will not substitute its judgment for that of the General Assembly.*" (Emphasis added.)

In the four cases now before this court the record is completely lacking in any evidence supporting the position of Riss that this exemption "is on its face arbitrary and can not rest on any reasonable consideration of difference or policy."

As this claim is totally unsupported by any evidence in the record, it would appear to mean that as a matter of law, regardless of any conceivable evidentiary situation, this exemption is arbitrary and invalid. It is conceivable that the General Assembly seeking to raise additional revenue by this tax against vehicles with the greater number of axles, felt that household goods, due to their bulk, do not constitute loads as heavy as other types of freight.

But whatever may have been their reason, there is nothing in the record which affirmatively shows that the exemption was unreasonable or arbitrary, and under the rule in the *Alger case, supra,* we should not substitute our judgment for that of the General Assembly. For the reasons above set forth, we conclude that the third assignment of error, which corresponds closely to the second question presented in the brief of appellant, is not well taken and must be overruled.

The fourth assignment of error has to do with the claim by

Riss that it is exempt from the payment of the highway use tax by reason of reciprocity "which existed between the state of Ohio and the various states out of which appellant operates."

This is similar, but only partly so, to the first question presented in appellant's brief which is as follows:

"Reciprocity agreements which were in effect *during the third and fourth quarters of 1955 exempted appellant from the payment of the highway use tax.*" (Emphasis added.)

As we have heretofore pointed out, the audit periods in case numbers 6554 and 6555 include the last half of 1955, while the audit periods in case numbers 6552 and 6553 cover the last half of 1956. It would appear then that appellant has completely abandoned its contention with reference to any reciprocity exemption accruing to Riss under case numbers 6552 and 6553, for the reason that they were in 1956 and appellant apparently no longer claims there were any possible reciprocity benefits as late as 1956.

In the *Interstate case, supra* (164 Ohio St., 122), Exhibit No. 25 consisted of the seventeen reciprocal agreements between Ohio and other states, which were claimed to be in force on October 1, 1953, when the Highway Use Tax Law first became effective. Those states were Alabama, Delaware, Georgia, Indiana, Kentucky, Louisiana, Michigan, Minnesota, Mississippi, Missouri, Nebraska, North Carolina, Oklahoma, Pennsylvania, Tennessee, Texas and West Virginia. The decision in the *Interstate case, supra*, granting exemption from Ohio's highway use tax to Michigan-based trucks, was announced on July 27, 1955, and in the official report of the Ohio Department of Taxation for the year ended June 30, 1956, there appears the following statement:

"* * * *Shortly thereafter, Ohio announced a cancellation of existing reciprocity agreements and offered to negotiate new agreements which would exclude third structure taxes.*" (Emphasis added.)

In the report of the Department of Taxation for the year ended June 30, 1958, with reference to highway use tax, there appears the following statement:

"Ohio is empowered to enter into reciprocal agreements with other states levying a highway use tax, but as yet has not done so except for the exemption (household goods carriers) noted above."

In the 1960 report of the Department of Taxation for the year ended June 30, 1960, there appears the following statement:

"Although Ohio law authorizes negotiation of reciprocity agreements with other states levying similar taxes, no such agreements exist in this field and on foreign vehicles presently subject to the tax."

The material above quoted is from official reports of the Ohio Department of Taxation, which are required by law to be prepared and filed with the Governor annually pursuant to the provisions of Sections 121.18, 149.01 and 5703.42, Revised Code. The Tax Commissioner is one of the three members of the Reciprocity Board mentioned in Section 5728.15, *supra*.

That the state of Ohio acted promptly to cancel all reciprocity agreements soon after the announcement of the decision in the *Interstate Motor Freight case, supra* (164 Ohio St., 122), on July 27, 1955, also is apparent from litigation filed with reference to such cancellations. In the *Alger case, supra*, the second contention was that the Ohio Reciprocity Board lacked the authority to cancel reciprocity agreements with certain designated states. At page 431 of the *Alger case* (166 Ohio St.), *supra*, the court said:

"Thus under the circumstances of these cases it is our opinion that the reciprocity board created by Section 4503.37, Revised Code, had the power to cancel the reciprocity agreement entered into with the state of Michigan."

See, also, *Key, Trustee, v. Bowers, Tax Commr.*, 171 Ohio St., 470, and *Central Motor Lines, Inc., v. Bowers, Tax Commr.*, 172 Ohio St., 225, from which it is apparent that by letter or notice dated August 9, 1955, steps were initiated to bring about the cancellation of the various reciprocity agreements involved at or soon after the expiration of the thirty-day period.

We must conclude, therefore, that Riss has completely abandoned any claim for abatement of the assessments in cases numbers 6552 and 6553, for the reason that it fails in its brief to discuss the reciprocity with reference to the last half of 1956.

With reference to case No. 6555 for the third quarter of 1955 and case No. 6554 for the fourth quarter of 1955, we find ourselves in agreement with the position taken by the Board of Tax Appeals on two grounds—first, there was a complete ab-

sence of proof with reference to the alleged reciprocity agreements, and, second, there was a complete absence of proof as to what vehicles operate what mileage in Ohio giving rise to this claim of reciprocity exemption. In the case of the *Kaplan Trucking Company, supra* (168 Ohio St., 141), it was pointed out that the Michigan and Indiana reciprocity agreements had been cancelled. Reference was also made to the claim of the Tax Commissioner that residency was not the only test but that a second test was the place of maintenance and registry. See, also, *Eastern Express, Inc.,* v. *Bowers, Tax Commr.,* 170 Ohio St., 345, which makes reference to two classes of cases in which a corporation domiciled in the state of Indiana was not entitled to exemption due to reciprocity.

It follows, therefore, that by the failure of appellant to present proof of the existence of any or all of the reciprocity agreements which had been or were in effect it is not in a position to assert the benefits thereof. So far as official notice is concerned, the board was under no duty to officially notice the existence or nonexistence of such agreements at the time in question. See 21 Ohio Jurisprudence (2d), 37 *et seq.,* Section 16 *et seq.* The failure of appellant to offer any evidence with reference to specific vehicles and furnish the other necessary information also is fatal to the appellant's claim.

For the reasons above set forth, the fourth assignment of error in each of the four cases is not well taken and must be overruled.

*Decisions affirmed.*

DUFFEY, P. J., and DUFFY, J., concur.

(No. 6557—Decided September 7, 1961.)

BRYANT, J. This is an appeal by Riss & Company, Inc., herein called Riss, from a decision by the Board of Tax Appeals affirming the order of Stanley J. Bowers, Tax Commissioner, rejecting an application by Riss for the refunding of $233,229.83 allegedly illegally paid as highway use taxes.

Riss has filed in this court six appeals from the Board of Tax Appeals relating to the alleged unconstitutionality or illegality of the highway use tax, Sections 5728.01 to 5728.15

of the Revised Code, enacted July 16, 1953. This law levies a graduated tax on commercial cars, commercial tractors and other vehicles therein named having more than two axles. It is required that a highway use permit be obtained for vehicles subject to the tax and that a tax be paid at rates ranging from one-half cent to two and one-half cents per mile, depending upon the number of axles and the number of miles traveled. Operators of trucks and vehicles subject to the tax are required to keep records.

The tax was first effective on October 1, 1953, and the first report covered the quarter starting with that date and ending on December 31, 1953. Within twenty days after the end of that quarter and each succeeding quarter, the law required that a tax return be filed and the full amount of the tax due under such return be paid at the time the tax return was filed.

The six appeals above referred to have to do with the period between October 1, 1953, and December 31, 1956, a total of thirteen quarters. The questions involved in the six appeals will be decided in three opinions by this court.

This opinion relates to case No. 6557, an appeal from the decision of the Board of Tax Appeals in its case No. 42,840. The period involved is from October 1, 1953 through June 30, 1955, or seven quarters, during which time Riss held the required highway use permit as to each of its vehicles, filed the required highway use tax return at the prescribed time for each of the seven quarters and at the time of filing each return paid in full the highway use tax required.

On July 27, 1955, the Supreme Court of Ohio in the case of *Interstate Motor Freight System* v. *Bowers, Tax Commr.,* 164 Ohio St., 122, upheld the claim of Michigan-based truckers that they were exempt from the Ohio highway use tax and entitled to a refund of tax paid under a 1937 reciprocity agreement between Ohio and Michigan. In the six quarters which followed, Riss continued to file its highway use tax returns at the appointed times but it discontinued entirely making any payments of the tax. On October 24, 1955, Riss filed its claim No. 2481 with the Tax Commissioner asking for a refund of $233,229.83, representing most of the amount it had paid during the preceding seven quarters as highway use tax.

As before indicated, this opinion will deal with questions

arising in connection with the claim for reimbursement. Two other decisions are being issued by this court, one in case No. 6558* (Board of Tax Appeals case No. 42,641), having to do with the appeal of an assessment made December 3, 1959, in the amount, including penalty, of $108,502.45 for highway use tax for the first half of 1956, while the other opinion* deals with four cases, our numbers 6552 through 6555 (Board of Tax Appeals cases Nos. 42,608 through 42,605), dealing with assessments totalling $150,299.11 for the last half of 1955 and the last half of 1956.

As above stated, this opinion will be confined to questions arising in our case No. 6557 (Board of Tax Appeals case No. 42,840), which began when Riss filed its claim for reimbursement (claim No. 2481) seeking a refund of $233,229.83 previously paid as highway use tax. In support of this claim Riss enumerated five reasons, which as set forth in its Exhibit A are as follows:

"(1) Sections 5728.01 to 5728.15, Revised Code, are null and void in violation of the provisions of the Constitution of the United States and without limiting the foregoing in violation of the following specific provisions of the Constitution of the United States: (a) Article I, Section 8, Clause 3; (b) Article I, Section 10; and (c) Amendment 14 of the Constitution of the United States.

"(2) Sections 5728.01 to 5728.15 of the Revised Code are null and void in violation of the provisions of the Constitution of the state of Ohio and without limiting the foregoing in violation of the following specific provisions of the Constitution of the state of Ohio: (a) Article I, Section 2; (b) Article I, Section 16; (c) Article II, Section 26; (d) Article II, Section 28 and (e) Article XII, Section 5.

"(3) Sections 5728.01 to 5728.15 of the Revised Code are null, void and inoperative in their entirety by reason of having been declared inapplicable to commercial cars with three or more axles operated by 'Michigan motor carriers' as that term is defined in the agreement between the state of Ohio and the state of Michigan dated October 26, 1937, and also by reason of being inapplicable to similar commercial cars operated by other out-of-state motor carriers under agreements between the state of Ohio and numerous other states, thereby defeating

*See footnote, page 429.

the entire legislative purpose of the statute and rendering the statute inequitable, unjust and discriminatory in its application to the remaining commercial cars with three or more axles, contrary to the intent of the Legislature of Ohio to provide uniform treatment.

"(4) Sections 5728.01 to 5728.15 of the Revised Code make up one inseparable tax law which must apply alike to all privately operated commercial cars with three or more axles or otherwise have no application at all.

"(5) Sections 5728.01 to 5728.15 of the Revised Code of Ohio are inapplicable as to certain commercial cars operated by applicant but licensed in states other than Ohio, for the further reason that under the terms and provisions of agreements between the state of Ohio and numerous other states, there is a waiver and exemption of the tax thereby imposed."

On March 8, 1960, the Tax Commissioner overruled Riss' claims and denied the application for refund, whereupon Riss appealed to the Board of Tax Appeals and in its notice of appeal made the following assignments of error:

"(1) Sections 5728.01 to 5728.14, Revised Code, are null and void and in violation of the provisions of the Constitution of the United States and without limiting the foregoing in violation of the following specific provisions of the Constitution of the United States: (a) Article 1, Section 8, Clause 3; (b) Article 1, Section 10; (c) Amendment XIV of the Constitution of the United States.

"(2) Sections 5728.01 to 5728.14 of the Revised Code are null and void and in violation of the provisions of the Constitution of the state of Ohio and without limiting the foregoing in violation of the following specific provisions of the Constitution of the state of Ohio: (a) Article I, Section 2; (b) Article I, Section 16; (c) Article II, Section 26; (d) Article II, Section 28; (e) Article XII, Section 5.

"(3) Sections 5728.01 to 5728.14 of the Revised Code are null, void and inoperative in their entirety as applied to appellant in that the provisions applying to the exemption for household goods carriers are unreasonable and unlawful in respect to the applicant, who uses the same roads in Ohio as do the household goods carriers.

"(4) Appellant is exempt from the payment of the within

tax by reason of reciprocity which existed between the state of Ohio and the various states out of which the appellant operates.''

It will be noted that grounds one and two of the assignments of error filed before the Board of Tax Appeals are identical with paragraphs one and two of Exhibit A filed with the Tax Commissioner, both claiming violations of the federal and state Constitutions. It is also noted that the third and fourth grounds in Exhibit A are dropped entirely, while the third ground in the notice filed before the board deals with an exemption granted to household goods carriers under the terms of Section 5728.13 of the Revised Code, as amended effective October 13, 1955 (126 Ohio Laws, 1009). The fourth error assigned before the board claims a flat exemption of Riss from payment of highway use tax due to the existence of reciprocity agreements, while in the fifth ground of Exhibit A the exemption was claimed only ''as to certain commercial cars'' operated by Riss.

The matter came on for hearing before an attorney examiner for the Board of Tax Appeals on April 27, 1960. At that hearing counsel for Riss offered and counsel for the Tax Commissioner agreed to insert in the record the testimony previously taken by deposition of Ivan E. Moody of Kansas City, Missouri, head of the legal, insurance and commercial departments of Riss, and its chief counsel. At that time counsel for Riss withdrew the third assignment of error, under which it was claimed the highway use tax was unconstitutional because of an exemption from the tax granted by the law for household goods carriers. This was for the reason that the exemption was not effective until nearly three and one-half months after the close of the period for which the refund was claimed.

Moody gave a history of Riss & Company, Inc., as being founded in 1927 by R. R. Riss, Sr., then and still President; that for the past twenty or twenty-five years Riss' home office has been in Kansas City, Missouri; that Riss was certificated by the Interstate Commerce Commission to operate in twenty-two states and the District of Columbia; that Riss had terminal locations in one or more municipalities in Massachusetts, New Jersey, Pennsylvania, Maryland, New York, West Virginia, Ohio, Michigan, Indiana, Illinois, Missouri, Oklahoma, Texas, Colorado, Kansas, Nebraska, Virginia, Kentucky, and Con-

necticut; and that the total amount paid for which the refund was claimed was in part for vehicles owned by Riss and in part for vehicles leased by Riss.

Moody identified exhibits one through eight. Exhibits one through seven relate to the seven quarterly periods involved. They are quite voluminous. For example, Exhibit one contains eleven pages and relates to the fourth quarter of 1953 and the material is arranged in five columns. The first is the highway use permit number of the vehicle, and the second sets forth the name of the person alleged to be owner of the vehicle. The third and fourth columns set forth the motor vehicle license number and the state by which it was issued, while the fifth column contains the number of miles the vehicle traveled in Ohio during the quarterly period. The top or cover page is a recapitulation by states and shows the number of miles traveled during the period by vehicles registered in that state. The cover page also contains a computation of the amount of tax due. The next six exhibits are similar, while the eighth exhibit is a further recapitulation showing the name of the state where the vehicle was registered and the amount of tax due for all such vehicles for each of the seven quarters and the total for the entire period.

On the authority of the case of *S. S. Kresge Co.* v. *Bowers, Tax Commr.*, 170 Ohio St., 405, the Board of Tax Appeals refused to pass upon constitutional questions contained in the first and second assignments of error filed with it, while as we have pointed out the third assignment of error was withdrawn, leaving only the fourth which was Riss' claim of exemption by virtue of reciprocity agreements. As to this question and the claim that the Board of Tax Appeals should officially notice such agreements, the board pointed out that no reciprocity agreements had been introduced into evidence nor was there any other evidence that the Ohio mileage traveled by the vehicles operated by Riss and listed in appellant's exhibits one through seven were exempted from the highway use tax. The board in its decision wrote as follows:

"With respect to the fourth claim of appellant that the mileage traveled by some of its vehicles was exempt from the Ohio highway use tax by virtue of certain reciprocity agreements made and entered into between some Ohio officials and

the officials of some other states, it is noted that there have been no such alleged reciprocity agreements introduced into evidence, * * * nor has there been any competent evidence offered to show that the Ohio mileage traveled by the vehicles listed in appellant's Exhibits 1 through 7 is exempted from highway use taxation by any specific provision of any specific reciprocity agreement.

" " * * *

" " * * * in 21 O. J. (2d), 37, the rule regarding judicial notice is set out in the following language:

" " " * * * the rule may be stated broadly that courts will take judicial notice of whatever is commonly or generally known or ought to be generally known within the limits of their jurisdiction, for the court is presumed to know what is of common knowledge.

" 'Generally speaking, three material requisites seem necessary: (1) the matter must be a matter of common and general knowledge; (2) it must be well established and authoritatively settled, and not doubtful or uncertain; and (3) it must be known within the limits of the jurisdiction of the court.'

"The alleged reciprocity agreements which apparently are relied upon, in part, by the appellant to support its claim that certain miles traveled by certain of its trucks over Ohio highways were miles not subject to the Ohio highway use tax are certainly not agreements of common or general knowledge and such agreements must be submitted into evidence and proven if they are to form the base for tax exemption. * * * Since we have no agreement, or agreements, before us to indicate that appellant has paid the Ohio highway use tax on mileage exempted by some agreement, it necessarily follows that appellant has failed to prove its case when it failed to submit the very agreement upon which it relied."

The Board of Tax Appeals overruled the errors claimed by Riss and affirmed the order of the Tax Commissioner in rejecting the claim for refund. Riss in its notice of appeal to this court claims five errors which are as follows:

"(1) Sections 5728.01 to 5728.15, Revised Code, are null and void and in violation of the provisions of the Constitution of the United States and without limiting the foregoing in violation of the following specific provisions of the Constitution

of the United States; (a) Article I, Section 8, Clause 3; (b) Article I, Section 10; (c) Amendment XIV to the Constitution of the United States.

"(2) Sections 5728.01 to 5728.15, Revised Code, are null and void and in violation of the provisions of the Constitution of the state of Ohio and without limiting the foregoing in violation of the following specific provisions of the Constitution of the state of Ohio: (a) Article I, Section 2; (b) Article I, Section 16; (c) Article II, Section 26; (d) Article II, Section 28; (e) Article XII, Section 5.

"(3) Sections 5728.01 to 5728.15, Revised Code, are null, void and inoperative in their entirety as applied to appellant in that the provisions applying to the exemption for household goods carriers are unreasonable and unlawful in respect to the appellant, who uses the same roads in Ohio as do the household goods carriers.

"(4) Appellant is exempt from the payment of the within tax by reason of reciprocity which existed between the state of Ohio and the various states out of which the appellant operates.

"(5) Appellant, to the extent it was not the owner of commercial cars or tractors, was not liable for payment of the within tax pursuant to Section 5728.06, Revised Code."

We observe that the first and second errors assigned are claims that the Highway Use Tax Law contravenes the federal and state Constitutions. These claimed errors are in identical form with the first and second claimed errors urged before the Board of Tax Appeals, which it declined to pass on because it lacks the power so to do. They are identical with the first and second reasons urged upon the Tax Commissioner.

We also note that the third assignment of error, which has to do with the claim of unconstitutionality allegedly arising from the granting of an exemption to those engaged exclusively in the interstate movement of household goods, was urged in identical terms in the notice of appeal filed with the Board of Tax Appeals, but that it was specifically withdrawn for the reason that whereas the audit period involved in this case begins on October 1, 1953, and ends on June 30, 1955, the amendment granting this exemption (see Section 5728.13, Revised Code, *supra*) was not effective until October 13, 1955, more than three months after the close of the audit period.

We think the action of counsel for Riss was entirely sound in withdrawing the third assignment of error and, without any reference to the question as to whether in this state of the record it can now be urged as an error, we feel that there are good reasons why it must be overruled, one of them being that the exemption was not effective until long after the audit period in this case and was in no way connected with the period for which the claim for refund is asserted.

There is still another reason which will apply to all three of the first three errors assigned and that is that so far as we can find nowhere in the briefs filed on behalf of Riss is there any mention either of the federal or state constitutional objections nor is there mention or discussion of the exemption to carriers of household goods.

It seems clear that appellant has completely abandoned the first three of the errors assigned in its notice of appeal, and there is statutory authority for this court to disregard errors which are not separately argued in the briefs filed by appellant, Section 2505.21 of the Revised Code providing in part as follows:

"* * * Errors not specifically pointed out in the record *and separately argued by brief may be disregarded* * * *." (Emphasis added.)

In 3 Ohio Jurisprudence (2d), 480, 481, 482, Appellate Review, Section 564, "Pointing Out Errors," it is said:

"* * * It is the duty of a reviewing court to consider only such errors as are assigned *and argued in appellant's brief*, and such court will not search a record to discover the existence, if any, of errors to which its attention has not been called. * * *

"*Errors not treated in the brief, even though assigned in the assignment of errors, will ordinarily be regarded as having been abandoned.*" (Emphasis added.)

In the case of *Uncapher* v. *Baltimore & Ohio Rd. Co.*, 127 Ohio St., 351, the first paragraph of the syllabus reads as follows:

"The Supreme Court of Ohio is not obligated to search the record for error that is not indicated in the brief or oral argument of counsel for the complaining party, notwithstanding the assignments contained in the petition in error."

See, also, the case of *Barr Hotel Co.* v. *Lloyd MacKeown*

*Buick Co.*, 104 Ohio App., 69, in which the fifth paragraph of the syllabus reads as follows:

"Errors not argued by brief may be disregarded by the reviewing court."

There is another reason why the constitutional objections under the federal and state Constitutions as set forth in assignments of error one and two as filed in this court would have to be overruled and that is because of previous rulings by the Supreme Court of Ohio and the Supreme Court of the United States, which have had the effect of sustaining the constitutional validity of the highway use tax.

It is true that in one of the early cases decided by the Supreme Court involving the highway use tax, *Interstate Motor Freight System, supra* (164 Ohio St., 122), the Supreme Court refused to pass upon the numerous constitutional objections urged. However, in the case of *Geo. F. Alger Co.* v. *Bowers, Tax Commr.*, 166 Ohio St., 427, the court discussed a number of constitutional objections which were raised. These included the claim that the highway use tax was discriminatory (1) because it exempted trucks with only two axles, (2) because it allegedly did not evenly graduate the tax among trucks with more than two axles in relation to the weight carried per axle, and (3) because of alleged different treatment of interstate and intrastate commerce, that there was a want of reasonable relationship between the tax and the purpose for which it was levied.

All these objections were overruled and the constitutionality of the tax upheld by the court in a *Per Curiam* opinion. That opinion (166 Ohio St., 427) relies on a decision of the United States Supreme Court in the case of *Capitol Greyhound Lines* v. *Brice, Commr.*, 339 U. S., 542, 94 L. Ed., 1053, 70 S. Ct., 806, that in determining constitutionality of state taxes so far as exemptions, classifications and graduations in the amount of tax, the rule must be "rough approximation rather than precision." (Pages 428 and 429.) The Ohio Supreme Court then upholds this tax, the opinion stating at page 429 as follows:

"We having determined that the tax imposed here bears a reasonable relationship to the purpose for which it was created, does not impair interstate commerce and is not discriminatory, it follows that it is a valid exercise of the taxing power."

The *Alger case, supra,* was appealed to the Supreme Court of the United States where the appeal was dismissed in 358 U. S., 43, 3 L. Ed. (2d), 43, 79 S. Ct., 21, and a rehearing denied in 358 U. S., 901, 3 L. Ed. (2d), 151, 79 S. Ct., 218.

See, also, *Kaplan Trucking Co.* v. *Bowers, Tax Commr.,* 168 Ohio St., 141, in which the claim was made, and overruled, that while the Highway Use Tax Law itself was not unconstitutional it was so administered that it deprived the appellant of its constitutional rights, it being contended that the constitutional guarantee of equal protection of the laws was violated by the administrative classification of motor vehicle common carriers according to state of residency. Certiorari was denied in that case (*Kaplan*) by the Supreme Court of the United States in 359 U. S., 927, 3 L. Ed. (2d), 629, 79 S. Ct., 606. See, also, *McCreary* v. *Bowers, Tax Commr.,* 106 Ohio App., 445, wherein the Court of Appeals for Licking County upheld the constitutionality of the Highway Use Tax Law—appeal dismissed for want of debatable constitutional question in *McCreary* v. *Bowers, Tax Commr.,* 168 Ohio St., 64. See also *Key, Trustee,* v. *Bowers, Tax Commr.,* 171 Ohio St., 470.

In light of the foregoing, it would appear that the first, second and third errors assigned by appellant in its notice of appeal to this court are not well taken, and it is, therefore, ordered that they be overruled.

In the fourth assignment of error, Riss contends it is exempt from the payment of highway use tax as to vehicles operated by it on Ohio highways by reason of "reciprocity which existed between the state of Ohio and various states out of which the appellant operates."

Riss, in its brief filed in this court, divides this assignment into two questions which it contends are presented for our determination and which are as follows:

"The Board of Tax Appeals should properly take official notice of the reciprocity agreements at issue in this appeal.

"The reciprocity agreements in effect during periods at issue in this appeal between the states of Ohio and various other states exempt the appellant from payment of the tax and the refund claim should be granted."

In the journal entry of the Board of Tax Appeals, the board wrote in part as follows:

"The matter was submitted to the Board of Tax Appeals upon the notice of appeal, the statutory transcript supplied by the Tax Commissioner, and the records of testimony and evidence presented to the Board of Tax Appeals at a hearing in Columbus, Ohio, on April 27, 1960. This record includes the deposition of Ivan E. Moody and eight exhibits identified by Mr. Moody. Briefs were also filed by counsel.

"The appellant, Riss & Company, Inc., is an interstate motor carrier. It operated under a Colorado charter until the middle of the year 1954 and, during the period here in question, it was, therefore, a resident of the state of Colorado. In the middle of the year 1956 it moved its charter from Colorado to Delaware. Its principal office is, and has been, in Kansas City, Missouri. During the period October 1, 1953, through June 30, 1955, it operated its trucks over Ohio highways by virtue of Interstate Commerce Authority No. MC 200 and it also operated over the highways in twenty-one other states and the District of Columbia.

"For the period here in question appellant filed Ohio highway use tax returns and paid the tax thereon in the amount of $233,229.83. From the testimony and evidence it appears that appellant had title to a few of the trucks which it operated, but that the great majority of the trucks it used in transporting freight were leased from other individuals and corporations, which latter corporations and individuals were, for the most part, residents of a state other than Colorado, and that said vehicles were also licensed and certificated in a state other than Colorado. (Appellant's Exhibits 1 through 8.)"

The entry then set forth the opinion of the Board of Tax Appeals based on the case of S. S. Kresge Co. v. Bowers, supra (170 Ohio St., 405), and other authorities there cited, that the board was without power to determine the constitutionality of statutes.

In searching for an answer to questions relating to whether the board should take "official notice of the reciprocity agreements at issue in this appeal" and possibly whether this court should take judicial notice of such agreements, consideration must be given to the subject which is to be officially or judicially noticed, namely, reciprocal agreements. To gain a better understanding of the meaning of the decision of the Supreme

Court in the *Interstate Motor Freight System case, supra* (164 Ohio St., 122), an examination of the court's official file was made and it was ascertained that Exhibit No. 25 in that case, which contained copies of reciprocal agreements with seventeen states, was represented to the court as being complete and containing all reciprocal agreements which were in effect when the highway use tax became effective on October 1, 1953 and in the period thereafter. Those states included Alabama, Delaware, Georgia, Indiana, Kentucky, Louisiana, Michigan, Minnesota, Mississippi, Missouri, Nebraska, North Carolina, Oklahoma, Pennsylvania, Tennessee, Texas and West Virginia.

It is noted that counsel for Riss in its brief in this case set forth what are claimed to be extracts from the reciprocity agreements in ten of the seventeen states just listed, but make no reference to agreements with seven of them—Alabama, Indiana, Louisiana, Michigan, Minnesota, Mississippi and Tennessee. The brief contains a quotation from an Illinois agreement which is nowhere mentioned in the Exhibit No. 25 of the *Interstate Motor Freight System case, supra.*

Both official notice and judicial notice relate to evidence or proof. Judicial notice is taken of certain facts because of the universality of knowledge of them. When such notice is taken, it takes the place of proof. Certain other matters which are in authenticated and easily ascertainable form are required to be judicially noticed. See Section 2317.44 of the Revised Code, requiring a court to take judicial notice of the statutes of other states, territories or jurisdictions, and Section 2309.29, providing that matters of which judicial notice is taken need not be stated in a pleading. In 21 Ohio Jurisprudence (2d), 36 and 37, Evidence, Sections 15 and 16, there appears the following:

"It has been said that, in general, courts will judicially notice only such facts, or conclusions from facts, as are not the proper objects of evidence—those which are styled nonevidential. Thus, a court will not take judicial notice of any fact which is in part dependent upon the existence or nonexistence of a fact of which the court has no constructive knowledge.

"By the great weight of judicial authority, in order to hold a witness guilty of summary contempt for testifying falsely, the court must have judicial knowledge that the witness' sworn testimony was in fact false."

"Though perhaps the power of judicial notice ought to be exercised with caution, the rule may be stated broadly that courts will take judicial notice of whatever is commonly or generally known or ought to be generally known within the limits of their jurisdiction, for the court is presumed to know what is of common knowledge."

An examination of the seventeen reciprocity agreements considered by the Supreme Court in the *Interstate Motor Freight System case, supra* (164 Ohio St., 122), and further considered in the case of *Hennis Freight Lines, Inc.,* v. *Bowers, Tax Commr.,* 170 Ohio St., 367, shows that several things are apparent, including (1) differences in terminology, (2) differences in scope and (3) differences in length and detail. All are subject to cancellation on thirty-day notice.

In the *Interstate Motor Freight System case, supra,* we also note that the audit periods involved covered the first two quarters the Highway Use Tax Law was in effect from October 1, 1953, through March 31, 1954.

Examination of exhibits one through eight, offered by Riss at the hearing before the Board of Tax Appeals, shows that the vehicles on which Riss is basing its claim for refund obtained their basic motor vehicle license plates in thirty-two states, which includes fifteen states not listed in the so-called complete list in the case of *Interstate Motor Freight System, supra,* and twenty-one states not referred to in Riss' brief.

From what has been said it seems to us to follow that reciprocal agreements are not proper subjects of either official or judicial notice and that when reliance is placed upon such agreements the only proper and safe course to follow is to prove the specific agreement relied upon and that it was in effect at the time in question. The importance of this is illustrated by the case of *Eastern Express, Inc.,* v. *Bowers, Tax Commr.,* 170 Ohio St., 345, decided February 24, 1960. The audit period involved was between October 1953 and September 1955, and under the facts in that case vehicles owned by Eastern Express, Inc., an Indiana corporation, or by others domiciled in Indiana and licensed and certificated in Indiana were allowed refunds, but two other important categories were denied the exemption, the amount involved being in excess of $241,000. The two categories included vehicles owned by domiciliaries but titled and registered in the state of New Jersey, and vehicles not

owned by Indiana domiciliaries and not titled and registered in Indiana but "operated under lease agreements by appellant." This result followed from an interpretation of language in the Indiana agreement.

From the determination made by the Board of Tax Appeals, it would appear that at all times during the seven quarters which are included in the audit period beginning October 1, 1953, and ending on June 30, 1955, Riss was a corporation organized under the laws of the state of Colorado. Colorado is not included among the states having reciprocal agreements with Ohio in the case of *Interstate Motor Freight System, supra* (164 Ohio St., 122), nor is it referred to in Riss' brief. It would appear that a corporation organized under the laws of a particular state is domiciled in such state, at least for the purposes of motor vehicle registration laws. See *Western Express Co. v. Wallace, Registrar*, 144 Ohio St., 612, and see 16 A. L. R. (2d), 1414, in which it is stated:

"* * * Courts in New Jersey, Ohio, and Texas have had the matter presented for their determination, and in each case have reached the same conclusion: that a domestic corporation is, by definition, a resident, and as a result, must register its motor vehicles regardless of where such vehicles are based, and regardless of the fact of their registration elsewhere."

Thus it appears that the residence or domicile of the owner, the place where the certificate of title is filed, the state which issued the basic motor vehicle registration and the place where the vehicle is based all are important facts in making a determinaiton of the right of Riss to the exemption claimed and the right to a refund in those cases where there is in fact a reciprocity agreement in effect under the terms of which an exemption from highway use tax is authorized.

As we are of the opinion that judicial or official notice may not be taken of reciprocal agreements and for the further reason that there is no proof in the record as to the existence of such agreements, even the briefs of appellant referring only to eleven of thirty-two states involved, and because of the total absence of evidence as to where the vehicles referred to in exhibits one through seven were based and where their certificates of title were issued, we conclude that the fourth assignment of error and the two parts thereof as set forth in questions one and two in appellant's brief are not well taken and must be overruled.

The fifth and last alleged error assigned in appellant's notice of appeal in this court is that Riss, in the case of vehicles not owned by it, including commercial cars or tractors, was not liable for payment of highway use tax. One answer to this contention is that Riss, in the case of leased vehicles, agreed with the owners thereof to pay all of the permit fees, taxes or decals required to operate the vehicle with the exception of the basic license plate. Mr. Moody, for Riss, testified as to Riss' arrangement with vehicle owners as follows:

"After he [vehicle owner] entered into the lease with Riss and Company, if there were peculiar types of permits or taxes or decals required by some states * * *, those would be purchased by Riss and Company. But the base plate was the responsibility of the owner-operator."

Thus it would appear that Riss was under contract with the owners of the vehicles leased to pay the cost of all taxes and permits incident to the operation. It also appears from the record that Riss made all of the payments in question without objection and took no steps to claim a refund until after the expiration of the audit periods here under consideration.

In view of the foregoing, it is our opinion that the fifth error assigned in the notice of appeal, which corresponds to the third question presented in the brief filed on behalf of Riss, is not well taken and must be overruled.

The brief contains a fourth question having to do with exemptions allegedly granted to other carriers and not to Riss, which it is claimed amounts to an unconstitutioal discrimination. As we view it, this last question presented is beyond and outside the scope of the errors assigned in the notice of appeal, but even if this were not the case there is simply no evidence of any kind or character in the record in this case to indicate what exemption is granted "to other carriers similarly situated and operating in competition with appellant." The objection set forth in the fourth question must, therefore, be overruled.

It follows, therefore, that each of the assignments of error must be overruled, the decision and final order of the Board of Tax Appeals must be affirmed and the cause remanded.

*Decision affirmed.*

DUFFEY, P. J., and DUFFY, J., concur.

DUFFEY, P. J., concurring. I concur in the principal opinion. However, I wish to comment more fully on one aspect. In addition to the claimed invalidity of the tax and the claimed exemption, appellant also contends that it is entitled to a certificate of abatement and a refund because it erroneously paid taxes for which it was not liable. Section 5703.05 (B), Revised Code, provides for refund of taxes "illegally or erroneously assessed or collected, or for any other reason overpaid, * * *." The Attorney General concedes that the appellant filed returns and paid taxes on vehicles which it did not own and for which under the then law it was not liable.

Appellant has not "overpaid" by reason of an assessment, since none was made in this case. Nor was the money illegally or erroneously collected in the sense of the Tax Commissioner making a specific finding of Riss' liability on such vehicles or taking action to require payment by Riss. Rather, Riss' apparent claim is that it erroneously paid the money under a mistake of fact or law.

The statute is remedial, and for the benefit of the taxpayer, and it should be liberally interpreted to that end. It does not contain a distinction between errors of fact and errors of law. However, one person may deliberately pay the taxes owed by another, knowing that he himself is not liable. The motivation may be business, self-interest, contractural obligation or gift. But such a payment is clearly not erroneous, nor is it "overpayment" in any sense.

It was incumbent upon appellant to establish the fact of an overpayment. The evidence of payment and the admission of nonliability by the Tax Commissioner and Attorney General would appear to establish a prima facie case for a refund. However, the appellant here introduced evidence which rebutted its own case. While the brief appears to imply that Riss paid the tax, believing itself liable, the testimony of its chief counsel, Ivan Moody, is to the contrary. During the tax periods involved, Riss leased equipment from owners and then subleased the equipment back. Referring to these owner-operator leases, Mr. Moody testified on direct examination as follows:

"Q. Under your lease agreement during the period in question state whether or not it was incumbent upon you to file the axle tax or the highway use tax which was accrued by this equipment. A. Yes, it was.

"Q. So that you actually paid it on behalf of the various individuals or companies that were listed in these exhibits. Is that correct? A. That's correct."

That testimony, together with that quoted by Judge Bryant, destroys any inference of overpayment arising from an error or misunderstanding on Riss' part as to its liability for the tax. A claim for refund must therefore rest on the other assigned errors. Judge Bryant's opinions dispose of those questions.

(No. 6558—Decided September 19, 1961.)

BRYANT, J. This is an appeal from a final order of the Board of Tax Appeals by Riss & Company, appellant, herein called Riss. Riss is a foreign corporation with its principal offices in Kansas City, Missouri. It operates a fleet of trucks carrying freight in interstate commerce in a twenty-two-state area.

This appeal has to do with highway use tax assessments as provided in Sections 5728.01 to 5728.15 of the Revised Code. It is one of six appeals by Riss to this court from the Board of Tax Appeals, each bearing a separate case number in this court, each having to do with the highway use tax and each dealing with different audit periods. In the six cases, thirteen quarterly periods are involved, beginning October 1, 1953, to and including December 31, 1956.

Three separate opinions of this court will be used to decide the questions involved in the six cases bearing six numbers, which have been appealed to this court from the Board of Tax Appeals, following board decisions in each case affirming the action of the Tax Commissioner.

Of the thirteen quarterly periods involved in the six appeals, this opinion will deal with two such periods, January 1, 1956, to June 30, 1956, for which periods the Tax Commissioner made assessments against Riss as highway use tax and penalty in the total amount of $108,502.45, following which Riss filed a petition for rehearing (Assessment No. F 21050) which was denied by the Tax Commissioner and the denial affirmed by the Board of Tax Appeals in its case No. 42,641, which, on appeal to this court, is case No. 6558.

One of the other opinions* deals with the seven quarterly periods between October 1, 1953, and June 30, 1955. During that time, Riss filed the required reports and made the required payments. It subsequently, in claim No. 2481 filed with the Tax Commissioner on October 24, 1955, asked for refund of $233,229.83, which claim was rejected by the commissioner and his action was affirmed in case No. 42,840 before the board, which, on appeal to this court, is case No. 6557.

The other separate opinion* deals with the four quarterly periods which were consolidated for briefing, argument and decision before the Board of Tax Appeals and in briefing in this court, involving in the aggregate assessments totaling $150,229.11, indentified as follows: our number 6555 (Board of Tax Appeals No. 42,605), 3rd quarter 1955; our number 6554 (Board of Tax Appeals No. 42,606), 4th quarter 1955; our number 6553 (Board of Tax Appeals No. 42,607), 3rd quarter 1956; and our number 6552 (Board of Tax Appeals No. 42,608), 4th quarter 1956. During the four quarterly periods just referred to, Riss filed the detailed highway use tax reports required setting forth the number of axles and the mileage traveled in Ohio by each of its vehicles for the quarterly periods involved, but failed and refused to pay any part of the tax.

Again directing our attention to the questions involved in our case number 6558, which is the subject of this opinion, it should be stated that Riss had obtained the necessary highway use permits which are required in case of tractors, commercial cars and other vehicles having more than two axles which are subject to the highway use tax. It should be stated also that during the period covered in this case Riss filed the two quarterly reports, covering the first half of 1956, showing the number of axles and the mileage traveled in such periods in Ohio by each of the vehicles operated by Riss, as required by the Highway Use Tax Law, but failed and refused to pay any part of the tax based upon the use of Ohio highways as disclosed in such reports.

The Highway Use Tax Law requires that the report for each quarterly period must be filed within twenty days after the close of the period and the full amount of the highway use tax

---

*See footnote, page 429.

shown to be due by such reports must be paid at the time the report is required to be filed.

It is admitted by all concerned that Riss filed complete reports at the times they were due but that it did not pay the tax shown to be due by such reports for the first two quarters of 1956 which are those involved in case number 6558, the subject of this opinion.

On December 3, 1959, the Tax Commissioner, in assessment No. F 21050, determined that for the period from January 1, 1956, through June 30, 1956, the highway use tax owed by Riss was $94,349.96, plus a 15 per cent penalty of $14,152.49, making a total of $108,502.45.

A copy of the assessment, properly attested, was served on Riss through the Secretary of State of Ohio on December 3, 1959, and was actually received by Riss on December 7, 1959. On the face of the assessment under the word, "Important," are set forth detailed instructions with reference to the time limits, instructions as to a petition for reassessment and the furnishing of cash or corporate surety bond, the bond provision reading as follows:

"In addition to the filing of a petition for reassessment the assessee must post a cash or corporate surety bond satisfactory to the commissioner, in the amount of the assessment including penalty, conditioned upon payment of the tax finally determined to be due."

On January 2, 1960, Riss by its counsel filed a petition for reassessment, setting forth its objections in the following language:

"Assessee objects to the tax on the grounds that it is a foreign corporation and that the tax is unconstitutional as it pertains to such company."

The petition was on a form furnished by the Department of Taxation (HUT 41) and at the bottom thereof is set forth a portion of Section 5728.10, Revised Code (127 Ohio Laws, 136), dealing with appeals from assessments and quoting the requirement in this section that the assessee must post "bond satisfactory to the commissioner conditioned upon payment of the tax finally determined to be due."

Although the assessment and penalty totaled $108,502.45 and the assessment notice stated that cash or surety bond satis-

factory to the commissioner "in the amount of the assessment including penalty" must be filed, appellant filed neither cash nor surety bond in any amount, but instead appellant's counsel tendered his personal check for $100. It was further indicated that the Tax Commissioner brought the need for a bond to the attention of appellant and that appellant was given a period of time in which to comply, but failed and refused to furnish bond in any amount.

On February 2, 1960, the Tax Commissioner filed a journal entry dismissing the petition for reassessment for the reason that appellant had failed to post the required bond. The entry stated that the assessment became final on January 7, 1960, and that, due to this failure to post cash or surety bond, the commissioner lacked jurisdiction to entertain the petition for reassessment.

On March 3, 1960, Riss appealed to the Board of Tax Appeals from the order of the commissioner denying the petition for reassessment, the notice of appeal setting forth the grounds therefor as follows:

"Such tax assessment, determination or order is erroneous in the following respects:

"(1) Assessee alleges that said assessment is unconstitutional and void in that it is a denial of due process and equal protection of the laws contrary to the Constitutions of the United States and of the state of Ohio.

"(2) Such assessment is invalid because it was made under authority of Section 5728.10, Revised Code, which section is unconstitutional in that it denies to assessee any hearing on the correctness of said assessment without the necessity of posting bond satisfactory to the commissioner, which requirement is unconstitutional in that it is an unreasonable restraint upon the due process of law and fair hearing to which assessee is entitled."

The matter came on for hearing before two attorney examiners of the Board of Tax Appeals, but no evidence of any sort was offered except a professional statement by counsel for Riss reading as follows:

"At the time the petition for reassessment was tendered to the Tax Commissioner or the Tax Commissioner's office, that a check in the amount of $100 of my own personal funds was

deposited at the time the petition for reassessment was filed. Subsequently, we were advised, of course, that we would have to file the bond in the full amount which we did not do. There is no question of fact there. We just didn't do it, and the Tax Commissioner subsequently finalized the order on the basis that we had not submitted in the full amount.''

In a further statement, counsel for Riss explained his client's position as follows:

''No, it was all handled by me as counsel for Riss and Company. The check was originally tendered with the idea in mind that we would subsequently submit a bond in the full amount, since that was the provision of the law, but a bond was not submitted in the full amount subsequently, and the tax was finalized. The only thing that we are attempting to contest here is whether that provision is constitutional and, secondly, whether it is reasonable for the Tax Commissioner to require a bond in the full amount of any taxpayer; but in this particular instance, of Riss and Company.

''Our position is double to the extent that it is the position of the company, particularly since this assessment actually— the tax accrued in 1956, the first two quarters of 1956, which was far ahead of the actual enactment of the provision with reference to the bond, that the statute is unconstitutional insofar as it is ex post facto to that previous tax return.''

On July 19, 1960, the Board of Tax Appeals filed a journal entry stating it was ''unable to find that the final order of the Tax Commissioner herein complained of is in any way unreasonable or unlawful'' and affirming the commissioner's order.

With reference to the first error assigned, the board overruled the objection stating that the Highway Use Tax Act was held to be constitutional by the Ohio Supreme Court in the case of *Geo. F. Alger Co.* v. *Bowers, Tax Commr.*, 166 Ohio St., 427, ''and that the Supreme Court of the United States refused to disturb said decision.''

With reference to the second error assigned, namely, that the assessment was invalid because made under Section 5728.10, *supra*, which section allegedly denies Riss a hearing on the correctness of the assessment without posting bond, the Board of Tax Appeals also overruled the objection on the authority of the case of *American Restaurant & Lunch Co.* v. *Glander, Tax*

*Commr.*, 147 Ohio St., 147. In the course of its opinion, the board wrote as follows:

"What was said by the Supreme Court with reference to the Board of Tax Appeals, as above noted, applies with equal force to petitions for reassessment which a taxpayer is authorized to file with the Tax Commissioner. Both the Board of Tax Appeals and the Tax Commissioner are creatures of the statute and just as the Board of Tax Appeals acquires jurisdiction to hear and decide on their merits only the appeals which are filed with it in strict conformity with the provisions of Revised Code Section 5717.02 (formerly General Code Sec. 5611), so the Tax Commissioner acquires jurisdiction to hear and decide on their merits the petition for highway use tax reassessment which are filed with him in strict conformity with the provisions of Revised Code Section 5728.10.

"Since the appellant failed to file its bond with the Tax Commissioner in an amount satisfactory to that official, it is obvious that the appellant has failed to comply with a mandatory provision of the statute it is attempting to use to secure a review of the assessment."

The board declined to pass upon the constitutionality of Section 5728.10, *supra*, claiming it lacked jurisdiction so to do under the holding in the case of the *S. S. Kresge Co.* v. *Bowers, Tax Commr.*, 170 Ohio St., 405. The board then affirmed the order of the Tax Commissioner dismissing the petition for reassessment.

In its appeal from the Board of Tax Appeals to this court, Riss filed the following notice of appeal:

"The appellant, Riss & Company, Inc., a nonresident of the state of Ohio, hereby gives notice of appeal from the order of the Board of Tax Appeals in the Department of Taxation of the state of Ohio made under date of *July 9, 1960*, bearing Case No. 42641 on the records of such board, to the Court of Appeals, Franklin County, Ohio; and a copy of such order is attached hereto as a part of this notice of appeal.

"Said decision and order of the board is erroneous, unlawful, and unreasonable in the following respects:

"(1) Assessee alleges that said assessment is unconstitutional and void in that it is a denial of due process and equal protection of the laws contrary to the Constitutions of the United States and of the state of Ohio.

"(2) Such assessment is invalid because it was made under authority of Section 5728.10, Revised Code, which section is unconstitutional in that it denies to assessee any hearing on the correctness of said assessment without the necessity of posting bond satisfactory to the commissioner, which requirement is unconstitutional in that it is an unreasonable restraint upon the due process of law and fair hearing to which assessee is entitled, and is an unconstitutional grant of legislative authority to the commissioner.

"Wherefore, appellant prays for a determination by the Court of Appeals of the unconstitutionality of Sections 5728.01 to 5728.15, inclusive, of the Revised Code of Ohio; that the aforementioned assessment or order of the Tax Commissioner was erroneously and unlawfully made; and that the order of the Board of Tax Appeals is unreasonable and unlawful, and should be set aside." (Emphasis added.)

It will be observed that Riss, in its notice of appeal as filed with the Board of Tax Appeals and with this court on August 18, 1960, states that it is appealing from an order of the board "made under date of July 9, 1960."

The Abstract of Docket of the Board of Tax Appeals, certified to this court by the secretary of the board, discloses no order made by the board on July 9, 1960, with reference to this case. This assumes first rate importance, if the statement in the notice be correct, for the reason that the thirty-day limit for appeals set forth in Section 5717.04 of the Revised Code would be exceeded. This section provides in part as follows:

"Such appeals shall be taken within thirty days after the date of the entry of the decision of the board on the journal of its proceedings, as provided by such section, by the filing by appellant of a notice of appeal with the court to which the appeal is taken and the board. * * *"

As we compute it, the thirty-day period counting from July 9, 1960, expired on August 8, 1960, yet the notices of appeal in this case were not filed until August 18, 1960, or forty days from July 9, 1960.

The copy of the board's journal entry, which was filed in this court by Riss, does not disclose when it was entered by the board, but the copy which was certified to this court by the board bears the date *July 19, 1960*, and this is the same date

appearing in the abstract of the board's docket. No objection on this point has been made on behalf of the Tax Commissioner. It is only on the assumption that the date of July 9, 1960, in the two notices of appeal was a clerical error and that the order referred to was that of July 19, 1960, that this court has any jurisdiction in this appeal.

The first error set forth in the notice of appeal is that the assessment is void as amounting to a denial of due process and the equal protection of the laws as guaranteed in the federal and state Constitutions.

We find ourselves unable to agree with this contention in view of the decision of the Supreme Court of Ohio in the case of *Geo. F. Alger Co.* v. *Bowers, Tax Commr., supra,* (166 Ohio St., 427), in which case the highway use tax was attacked as discriminatory, making unreasonable classifications, impairing interstate commerce and not having a reasonable relationship between the tax and the purpose for which it was created. All these objections were overruled in the *Alger case* and the court in a *Per Curiam* opinion, at page 429, said, "It follows that it is a valid exercise of the taxing power."

See, also, *Kaplan Trucking Co.* v. *Bowers, Tax Commr.,* 168 Ohio St., 141, in which, in a *Per Curiam* opinion, it is stated at page 143 that:

"The appellant's basic contention is that the constitutional guarantee of equal protection of the laws was violated by the administrative classification of motor vehicle common carriers according to state residency, namely, requiring the Ohio highway use tax to be paid by carriers domiciled in Ohio but not by those domiciled in Michigan or Indiana. However, the appellee Tax Commissioner insists that residency was not the only test but that a second was the place of maintenance and registry of vehicles. He contends that the classification was not unconstitutional or discriminatory among members of the same class in view of the evidence that during the period the reciprocity agreements were in effect the appellant paid Michigan taxes on vehicles which it owned and licensed in Michigan but did not pay the larger Ohio taxes on those vehicles; that it paid no Michigan or Indiana tax on its equipment licensed in Ohio; that all Ohio domiciled competitors of the appellant were likewise required to pay the tax; that Michigan and Indiana carriers

were allowed free use of Ohio highways, and Ohio carriers enjoyed a similar privilege in Michigan and Indiana; that the appellee Tax Commissioner was of the opinion that the use tax was not within the purview of the reciprocity agreements but that he was obliged to follow the contrary view of this court; and that the reciprocity agreements were canceled soon after the decision of this court in the *Interstate Motor Freight System, case, supra.*"

The decisions in the cases of the *Alger, supra*, and *Kaplan Trucking Co., supra*, were carried to the Supreme Court of the United States, which left both unchanged. See, *Geo. F. Alger Co.* v. *Bowers, Tax Commr.*, 358 U. S., 43, 3 L. Ed. (2d), 43, 79 S. Ct., 21 (appeal dismissed), rehearing denied, 358 U. S., 901, 3 L. Ed. (2d), 151, 79 S. Ct., 218; and *Kaplan Trucking Co.* v. *Bowers, Tax Commr.*, 359 U. S., 927, 3 L. Ed. (2d), 629, 79 S. Ct., 606 (certiorari denied).

As above noted, the first error claimed by Riss in its notice of appeal to this court consists of claims of a denial of due process and equal protection of the laws, alleged to contravene the Constitutions of the United States and the state of Ohio. In our opinion, the decisions of the Supreme Court of Ohio and the Supreme Court of the United States above referred to fully answer the objections made by Riss and uphold the constitutionality of the statute.

It may be that counsel for Riss concur in this view. Nowhere in the briefs filed on behalf of Riss is there any argument or authority cited in support of the first error claimed in the notice of appeal. The failure to discuss this ground in the briefs amounts to an abandonment of the claim and is in itself a further reason for denying this claimed error.

For the reasons above set forth, the first error assigned by Riss in its notice of appeal to this court is not well taken and must be overruled.

The second and the only other error set forth by Riss in its notice of appeal to this court is the assertion that the assessment here under attack "is invalid because it was made under authority of Section 5728.10, Revised Code." This section is claimed to be unconstitutional because "it denies to assessee [Riss] any hearing on the correctness of said assessment without the necessity of posting bond satisfactory to the commis-

sioner.'' It is further claimed that the bond requirement ''is an unreasonable restraint upon the due process of law and fair hearing,'' and further that it is ''an unconstitutional grant of legislative authority to the commissioner.''

In its opening brief filed in this court, Riss sets forth the three questions which are presented to this court for determination in this appeal. The three questions are as follows:

''I. The imposition of the requirement of a bond as a prerequisite for the filing of a petition for reassessment constitutes the enactment and enforcement of retrospective legislation as to this appellant.

''II. The provision for a bond as a prerequisite to the filing of a petition for reassessment subject to the satisfaction of the Tax Commissioner constitutes an unconstitutional delegation of legislative authority.

''III. The provision for the filing of a bond as a prerequisite to a petition for reassessment constitutes an unconstitutional denial of due process of law.''

The second error assigned in the notice of appeal appears to contain three grounds why it is claimed that the assessment against Riss is invalid, as follows: (A) Section 5728.10, *supra*, denies Riss a hearing on the correctness of the assessment unless Riss posts a bond satisfactory to the Tax Commissioner; (B) the requirement for a bond to the satisfaction of the Tax Commissioner ''is an unreasonable restraint upon * * * due process of law and fair hearing''; and (C) the requirement to furnish a bond to the satisfaction of the Tax Commissioner ''is an unconstitutional grant of legislative authority to the commissioner.''

As we see it, grounds ''(A)'' and ''(B)'' of the second and final part of the notice of appeal are dealt with in Question III in the brief of appellant, while ground ''(C)'' appears to be dealt with under Question II in the brief of appellant.

Question I in appellant's brief, as to the claim that the application of the bond requirement found in Section 5728.10, *supra*, as amended, ''constitutes the enactment and enforcement of retrospective legislation,'' appears not to have been specifically referred to in any part of Riss' notice of appeal. Having been left out of the list of errors complained of, it may be too late to raise it now. But is the bond provision retrospective legislation when applied here? We doubt it.

The assessment involved in this case is for the first quarter (January 1 to March 31) and the second quarter (April 1 to June 30) of 1956, and the quarterly reports were due to be filed (and were filed) on or before twenty days after the close of the quarters, namely, on April 20, 1956, and on July 20, 1956.

Under the Highway Use Tax Law (Section 5728.01 *et seq.*, Revised Code), Riss was required at the time of filing the quarterly returns to pay the full amount of the tax. This it did not do.

Section 5728.10, *supra*, was amended by the One Hundred Second General Assembly of Ohio by the enactment of Amended Senate Bill No. 207. (See 127 Ohio Laws, 136.) One of the changes made by the amendment just referred to was the requirement that an appellant, at the time of filing a petition objecting to an assessment, "posts bond satisfactory to the commissioner conditioned upon the payment of the tax finally determined to be due." This amendment went into effect on September 5, 1957.

It was not until December 3, 1959, more than two years after the amendment to Section 5728.10, *supra*, requiring the posting of bond that the assessment was made by the Tax Commissioner. Both in the earlier form of Section 5728.10 (See 125 Ohio Laws, 369, 374), and in the form as amended in 1957, it was required that the petition filed with the Tax Commissioner set forth "with definiteness and particularity the items of said assessment objected to, together with the reasons for such objections."

Section 5717.02 of the Revised Code, relating to appeals from the Tax Commissioner to the Board of Tax Appeals, requires the filing of a notice of appeal which "and shall also specify the errors therein [final determination by the Tax Commissioner] complained of."

Section 5717.04 of the Revised Code, relating to appeals from the Board of Tax Appeals to this court, provides that the notice of appeal "shall set forth the decision of the board appealed from and the errors therein complained of."

What were the items in the assessment made by the Tax Commissioner which Riss objected to "with definiteness and particularity" in its petition filed with the Tax Commissioner, and what were Riss' "reasons for such objections"?

The answer must be found in the twenty-six words contained in Riss' petition filed on January 2, 1960, with the Tax Commissioner and reading as follows:

"Assessee objects to the tax on the grounds that it is a foreign corporation and that the tax is unconstitutional as it pertains to such company."

Earlier in this opinion we have set forth the exact language appearing in the notice of appeal to the Board of Tax Appeals and to this court. Nowhere in any of the notices has reference been made by Riss to its claim or objection that the bond requirement inserted in Section 5728.10, *supra*, by the 1957 amendment thereof was retroactive or *ex post facto* in its operation as applied to this case.

As we view it, appellant was under a duty to include this among the errors complained of in its notice of appeal to this court and, having failed to do so, cannot at this time enlarge its appeal by setting forth this claim as one of the questions presented.

As a result, the answer to the first question presented in Riss' brief must be that the provisions of Section 5728.10, *supra*, as amended, do not operate retrospectively as to Riss in this case.

Question II in Riss' brief and branch "(C)" of the second part of Riss' notice of appeal to this court attack the bond provision of Section 5728.10, *supra*, as an unconstitutional grant of legislative authority to the Tax Commissioner. The Tax Commissioner required either cash or a surety bond in an amount equal to the assessment and penalty.

The specific wording of the statute is that the taxpayer "posts bond satisfactory to the commissioner conditioned upon payment of the tax finally determined to be due." The condition or event which matures the bond obligation is nonpayment of the amount finally found due. This cannot exceed the Tax Commissioner's assessment. Read in the context of the statute, the provision imposes the implicit limitation that the amount of the bond cannot exceed the amount of the assessment determined by the Tax Commissioner. The word "satisfactory" refers to the form, wording, sufficiency of the security and similar details of the bond. The statute, so interpreted, provides adequate standards and is not invalid as an unlawful delegation of power.

The interpretation placed upon the bond provision fixing and also limiting the amount of the bond to the amount of the assessment and penalty appears to be within the express provisions of the statute, places an upper limit upon the amount of the bond and thus, in our opinion, answers satisfactorily the objections made to it.

The third and final question in Riss' brief, that the bond requirement in Section 5728.10, *supra*, "constitutes an unconstitutional denial of due process of law," apparently is covered by grounds "(A)" and "(B)" of the second part of Riss' notice of appeal.

Appellant contends that the bond requirement unreasonably restricts its opportunity to be heard. On prepayment of taxes or posting of bond as a condition to the right to contest, see *Ross Jewelers, Inc.*, v. *State*, 260 Ala., 682, 72 So. (2d), 402; *Ex parte State, ex rel. Attorney General*, 252 Ala., 149, 39 So. (2d), 669; *Lakefront Realty Corp.* v. *Lorenz, Treas.*, 19 Ill. (2d), 415, 167 N. E. (2d), 236; *Old Colony Rd. Co.* v. *Assessors of Boston* (1941), 309 Mass., 439, 35 N. E. (2d), 246. Cf. *Johnson* v. *Diefendorf* (1936), 56 Idaho, 620, 57 P. (2d), 1068. The tax here is payable quarterly. It is not a payment in advance, but rather covers the preceding quarter. On its face, we do not believe it is so harsh a burden as to be unconstitutional. There being no evidence of record that, as applied to the appellant, it unreasonably restricts the opportunity to be heard, we express no opinion on that possibility.

As heretofore pointed out, after the assessment by the Tax Commissioner a petition was filed which bore the words, "Petition for Reassessment." Even if the Tax Commissioner had completely waived the bond requirement, he would have been compelled to disallow the petition. The only ground in this petition was that Riss was a foreign corporation and hence it was allegedly unconstitutional to impose the highway use tax upon it. Under the law established by the case of *Eastern Express, Inc.*, v. *Bowers, Tax Commr.*, 170 Ohio St., 345, decided by the Supreme Court of Ohio on February 24, 1960, involving an Indiana corporation, there are numerous circumstances in which foreign corporations are subject to this tax. See, also, *Kaplan Trucking Co.* v. *Bowers, Tax Commr., supra* (168 Ohio St., 141), which makes reference to the cancellation of the reciprocity agreements between Ohio and other states.

474

As we view the record in this case, Riss never had disputed any of the facts or figures involved nor has it sought to introduce any additional facts or figures into the record. Its objections have been based upon legal or constitutional considerations.

For the reasons above set forth, the errors complained of by Riss in the decision of the Board of Tax Appeals are not well taken and must be overruled, the decision and final order of the Board of Tax Appeals is hereby affirmed at the costs of appellant.

*Decision affirmed.*

DUFFEY, P. J., concurs.
DUFFY, J., dissents.