HELMAN et al., Appellants,

v.

EPL PROLONG, INC., d.b.a. Prolong International,
d.b.a. Prolong Group, et al., Appellees.

[Cite as *Helman v. EPL Prolong, Inc.* (2000), 139 Ohio App.3d 231.]

Court of Appeals of Ohio,
Seventh District, Columbiana County.

Nos. 98 CO 83 and 99 CO 5.

Decided Oct. 30, 2000.

*Timothy A. Shimko & Associates, Timothy A. Shimko* and *James S. Gemelas,* for appellants Francis D. Helman et al.

*Buckingham, Doolittle & Burroughs, LLP, Mark J. Skakun* and *Walter A. Lucas,* for appellees EPL Prolong, Inc., Prolong Super Lubricants, Inc., Elton Alderman, Thomas Billstein, Thomas Kubota, and Ramon Pratt.

*James P. Collins, Jr.,* for appellee EPL Prolong, Inc.

WAITE, Judge.

This case originated as a complex multiparty complaint in the Court of Common Pleas of Columbiana County involving ninety-four plaintiffs and fifteen defendants. The claims arose out of appellants' purchase of corporate stock subscriptions in Prolong Industries, Inc., during the years 1985–1987. The trial court dismissed appellants' claims of fraud, breach of fiduciary duty, and breach of contract because they were barred by a variety of statutes of limitations. This timely appeal arises from a December 4, 1998 judgment entry that denied appellants' motion to reconsider the dismissal of counts one, two, and three of

their complaint and that also denied appellants' motion to reconsider its denial of a prior motion seeking to amend the complaint. Only six of the fifteen defendants-appellees have filed arguments on appeal. These six appellees are EPL Prolong, Inc., Prolong Super Lubricants, Inc., Elton Alderman, Thomas Billstein, Thomas Kubota and Ramon Pratt.

With respect to appellees who were granted a Civ.R. 12(B)(6) motion to dismiss, this court must accept the allegations in appellants' complaint to be true in our review of this matter. *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 192, 532 N.E.2d 753, 755. The factual allegations in the complaint as well as all reasonable inferences to be derived therefrom must be taken as true when addressing a motion to dismiss pursuant to Civ.R. 12(B)(6). *Vail v. Plain Dealer Publishing Co.* (1995), 72 Ohio St.3d 279, 280, 649 N.E.2d 182 184. The following recitation bears this axiom in mind.

Appellants filed an initial complaint and four amended complaints in this matter. The third amended complaint was withdrawn by appellants on June 18, 1998, and appellants' request to amend the complaint for the fourth time was denied. The record reflects, then, that the Second Amended Complaint ("Second Amended Complaint"), filed on May 7, 1998, directed the litigation and is the dispositive complaint in this appeal.

Appellants' Second Amended Complaint alleges that in 1981, defendants Ronald and Clifford Sloan owned a Canadian company that produced and sold an automotive lubricant called "Prolong." In 1984, the Sloans created four Canadian companies to control the production and sale of Prolong. These four companies were collectively known as the "Prolong Group." These companies were Prolong Industries, Inc., Multilevel Laboratories, a.k.a. Multilevel Labs, Prolong Distribution of Canada Limited, and Prolong Technology.

Appellants allege that "Prolong" was marketed and sold through a multilevel pyramid marketing system. In July 1985, the Sloans began soliciting for new distributors in Ohio. Another company, Prolong Technology of America, Inc., was set up to transact business in Ohio. It opened a regional office in Boardman, Ohio.

In the fall of 1985, the Sloans offered the Ohio distributors of "Prolong" the opportunity to purchase subscriptions for shares of stock in the Prolong Group of companies. The Second Amended Complaint refers to these shares as "preprimary" shares.

Appellants' allege that Ronald Sloan assured the prospective shareholders that the Prolong Group would be issuing publicly traded stock within one year. Ronald Sloan also assured subscribers that any shares purchased prior to a public stock offering would be delivered after the company became a publicly traded company.

All appellants subscribed to preprimary shares in Prolong Industries, Inc. between 1985 and 1987 at a price between $.375 and $.65 per share. Each appellant signed identical one-page subscription agreements that noted the price and number of shares being purchased. The agreements did not specify the type or quality of stock being purchased, the rights attached to ownership of the stock, or the expected delivery date of the stock certificates.

In 1987 Prolong Industries, Inc. sent letters to subscribers of "preprimary" shares assuring them that the company intended that those subscribers would eventually hold stock in a publicly traded company.

Appellants claim that in 1988 two new companies were formed to take control of the Prolong Group of companies. These new companies were EPL Prolong, Inc. and Prolong Super Lubricants, Inc. The assets and liabilities of the Prolong Group were transferred to Prolong Super Lubricants, Inc., except for its patents, which were transferred to EPL Prolong, Inc.

Appellants assert that in the fall of 1993, appellee Elton Alderman, president of Prolong Super Lubricants, Inc., met with "preprimary" shareholders at Timberlanes Restaurant in Salem, Ohio. Mr. Alderman told the shareholders that they would soon be given shares in a publicly traded company if they would not join a lawsuit pending in Mahoning County, Ohio, involving other holders of "preprimary" shares.

All of the outstanding stock of Prolong Super Lubricants, Inc. was transferred in 1995 to yet another company, Prolong International Corp., a Nevada corporation originally organized in 1981 under the name Giguere Industries, Inc. Giguere Industries, Inc. was essentially a nonfunctioning shell entity, but its stock could be publicly traded. Prolong Super Lubricants, Inc. became a wholly owned subsidiary of the newly renamed Prolong International Co.

Appellants' Second Amended Complaint alleges that Prolong International Corp. stock started to be publicly traded in 1996. Appellants claim that they have never received any shares in Prolong International Corp. or any other publicly traded company. Appellants claim that they were never made aware of the asset transfers between the various Prolong companies, although they were aware of the corporate restructuring. Appellants claim that defendants Elton Alderman, Edwin Auld, Raymond Pratt, Tom Kubota, Ronald Sloan, and Clifford Sloan were officers, directors, and shareholders of the various Prolong companies at all relevant times at issue in this case.

On April 8, 1997, appellants filed their original complaint ("Original Complaint") in the Court of Common Pleas of Columbiana County. The complaint listed ninety-four plaintiffs and fifteen defendants and contained twelve counts. On May 14, 1997, the case was removed to the Federal District Court of the

Northern District of Ohio in Youngstown. On September 29, 1997, appellants amended their complaint ("First Amended Complaint") in the district court. The First Amended Complaint was not made a part of the record of this appeal, although it appears from the record that it contained thirteen counts.

On November 25, 1997, the district court remanded the case to the Columbiana County Court of Common Pleas.

On January 14, 1998, appellees filed a motion to dismiss all but count two of the First Amended Complaint. The motion was granted in part on February 24, 1998. The court granted the motion due to the expiration of statutes of limitations contained in R.C. 1707.43, 2305.09, 1334.10(C), and 1336.09. The court permitted appellants to maintain an action based on a fifteen-year contract statute of limitations, as well as an action based on promises made by the appellees at Timberlanes Restaurant in 1993.

On May 7, 1998, appellants filed their Second Amended Complaint containing five counts. On June 5, 1998, appellees filed a Civ.R. 12(B)(6) motion to dismiss counts one, two, three, and five of the Second Amended Complaint due to the expiration of applicable statutes of limitations.

While appellees' motion to dismiss was still pending, appellants filed a third motion to amend the complaint on June 11, 1998, and attached the amended complaint to the motion. On June 11, 1998, the court granted appellants' motion as their final opportunity to amend their complaint. On June 18, 1998, appellants filed a motion to withdraw the June 11, 1998 complaint. The motion was granted on July 2, 1998.

On July 14, 1998, the court issued its ruling on appellees' June 5, 1998 motion to dismiss. Counts one (breach of contract), two (fraudulent conveyance of corporate assets), and three (breach of fiduciary duties) were dismissed. Counts four (breach of a 1993 novation contract) and five (fraud in the inducement) were left unaffected by the court's ruling. Also on July 14, 1998, the court ordered that all discovery be completed by September 30, 1998.

On September 24, 1998, one week before the close of discovery, appellants filed a fourth motion to amend the complaint, with the amended complaint attached to the motion. This fourth amended complaint contained eight counts, three of which had twice previously been dismissed by the court. On October 16, 1998, the court denied appellants' motion to amend the complaint.

On October 23, 1998, appellees filed a motion to dismiss a group of thirty-one (31) plaintiffs from the case due to their failure to attend scheduled depositions. That same day, appellees filed a motion for summary judgment against five groups of plaintiffs, including a group of sixteen plaintiffs who had signed

settlement agreements with appellees in 1993 involving the same subscription agreements at issue in the case at bar.

On October 29, 1998, while appellees' motions were still pending, appellants filed a motion to reconsider court's ruling on defendants' second motion to dismiss and plaintiffs' motion to amend.

On December 4, 1998, the court denied appellants' motions. It is this judgment entry that forms the basis of the instant appeal. Although the judgment entry contained language indicating that it was a final appealable order, it did not contain the language required by Civ.R. 54(B) that "there is no just reason for delay," which would have permitted an immediate appeal to be taken.

On December 17, 1998, appellants filed a notice of appeal of the December 4, 1998 Judgment Entry. The appeal listed twelve separate rulings by the trial court that were being appealed. This appeal was designated Appeal No. 98–CO–83.

On December 21, 1998, the trial court filed a judgment entry granting in part appellees' October 23, 1998, motion to dismiss and motion for summary judgment. All but seven plaintiffs were dismissed from the case. The judgment entry again stated that it was a final appealable order but did not contain the language required by Civ.R. 54(B) to make the ruling a final appealable order.

On January 14, 1999, appellants filed a notice of appeal of the December 21, 1998 judgment entry. This appeal was designated Appeal No. 99–CO–5.

On January 28, 1999, this court filed a journal entry that held in abeyance Appeal No. 99–CO–5 for thirty days to afford appellants an opportunity to have the trial court amend its December 21, 1998 ruling to conform to the requirements of final appealable order as prescribed in Civ.R. 54(B). The trial court filed its conforming nunc pro tunc judgment entry on February 26, 1999, converting the December 21, 1998 order into a final appealable order.

On March 11, 1999, this court consolidated Appeal Nos. 98–Co–83 and 99–CO–5.

## MOTION TO DISMISS CERTAIN PLAINTIFFS

As a preliminary matter, appellees filed with this court a motion to dismiss certain plaintiffs appellants from the appeal. Appellees argue that appellants' assignments of error do not in any way address the dismissal of forty-seven appellants in sections one and two of the December 21, 1998 judgment entry. Appellees maintain that the only issues being argued on appeal relate to the December 4, 1998 judgment entry. Appellees contend that, even if this Court were to reverse the trial court's ruling on the December 4, 1998 judgment entry,

the forty-seven appellants named in the December 21, 1998 entry would still be without recourse on their dismissal from suit.

In support of this contention, appellees erroneously rely in part on Loc.R. II(1) of the Seventh District Court of Appeals, which states:

"If an appellant fails to file his assignments of error and brief within the time provided by Rule 18(A) of Rules of Appellate Procedure, or within the time as extended, unless good cause is shown for such non-compliance with such Rule, the cause will be dismissed for want of prosecution or otherwise disposed of at the discretion of the Court."

As can easily be seen, App.R. 18(A) sets forth the time limits for filing briefs on appeal. Appellants have timely filed their assignments of error in this appeal. Therefore, Loc.R. II(1) does not provide a basis for dismissing the forty-seven appellants from this appeal.

■ That said, it appears that these appellants should be dismissed from this appeal for other reasons. Appellants' two notices of appeal list thirteen distinct rulings of the trial court that they are appealing. These rulings all became appealable by virtue of the December 21, 1998 judgment entry that was the first final appealable order in this case. "[A]n appeal from a final judgment brings up for review all interlocutory or intermediate orders involving the merits and necessarily affecting the final judgment which were made prior to its entry." *Hollington v. Ricco* (1973), 40 Ohio App.2d 57, 67, 69 O.O.2d 45, 51, 318 N.E.2d 442, 449. Appellants chose to limit their assignments of error to that part of the December 4, 1998 judgment entry that denied appellants' motions for reconsideration. The December 4, 1998 ruling reaffirmed the trial court's earlier decision that counts 1, 2 and 3 of the Second Amended Complaint were time-barred due to the expiration of applicable statutes of limitations.

The December 21, 1998 judgment entry dismissed the forty-seven named appellants for reasons entirely distinct and separate from the reasoning used in the December 4, 1998 ruling. The later judgment was based on appellants' failure to appear for scheduled depositions and because certain Appellants were subject to a release and settlement agreement involving the same stock subscription agreements at issue in the case at bar. Appellants did not submit any assignments of error disputing these later dismissals.

■ "A court of appeal deems as abandoned those assignments of error which, although in a notice of appeal, have not been separately argued in appellant's brief." *State v. Williams* (1984), 16 Ohio App.3d 232, 235, 16 OBR 248, 251, 475 N.E.2d 168, 170, citing *Riss & Co. v. Bowers* (1961), 114 Ohio App. 429, 438, 19 O.O.2d 451, 455–456, 183 N.E.2d 786, 791. App.R. 12(A)(2) states: "The court may disregard an assignment of error presented for review if the party raising it

fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)."

■ Even if the named forty-seven appellants were successful in their appeal of the December 4, 1998 ruling, they would also need to successfully appeal the December 21, 1998 judgment entry for this court to be able to grant appellants their requested relief. Appellants have abandoned any error as to the December 21, 1998 ruling by failing to submit assignments of error as to that ruling. This court cannot and will not search the record in order to make arguments on appellants' behalf. Therefore, appellees' motion has merit and is hereby sustained as to the forty-seven appellants dismissed in sections one and two of the December 21, 1998 judgment entry.

## STATUTE OF LIMITATIONS

In their first assignment of error appellants allege:

"The trial court erred in its 12/4/98 judgment entry insofar as it overruled plaintiffs' motion to reconsider the court's 7/14/98 judgment entry dismissing counts 1, 2, and 3 of plaintiffs' amended complaint.

"I. Count I of plaintiffs' complaint stated a breach of contract claim for which relief may be granted.

"II. Counts II and III of plaintiffs' amended complaint stated claims for fraudulent conveyance and breach of fiduciary duty for which relief may be granted.

"A. The Statute of Limitations for fraud does not begin to run until the fraud and the wrongdoing are discovered.

"B. EPL Prolong, Prolong Super Lubricants and Prolong International are successors in interest to the obligations created by the preprimary share agreements.

"C. Defendants owed plaintiffs a fiduciary duty."

■ This is an appeal of a denial of a motion for reconsideration in the trial court. The motion sought reconsideration of an interlocutory, not a final, order of that court. Although Ohio's Civil Rules do not specifically provide for a motion for reconsideration of interlocutory orders of a trial court, the Ohio Supreme Court has stated that such a motion is a permissible procedural tool. *Pitts v. Ohio Dept. of Transp.* (1981), 67 Ohio St.2d 378, 380, 21 O.O.3d 238, 239, 423 N.E.2d 1105, 1106, at fn. 1. This is consistent with the general rule that a trial court has plenary power to review its own interlocutory rulings prior to entering final judgment. *Vanest v. Pillsbury Co.* (1997), 124 Ohio App.3d 525, 535, 706

N.E.2d 825, 831–832. Requests for reconsideration of interlocutory orders in the trial court "may be entertained at the discretion of the court." *LaBarbera v. Batsch* (1962), 117 Ohio App. 273, 276, 21 O.O.2d 439, 441, 182 N.E.2d 632, 634; see, also, *Cleveland v. W.E. Davis Co.* (July 18, 1996), Cuyahoga App. No. 69915, unreported, 1996 WL 403337.

■ A trial court's determination of a motion for such reconsideration will not be disturbed on appeal absent an abuse of discretion. *Vanest, supra,* at 535, 706 N.E.2d at 831–832; *Picciuto v. Lucas Cty. Bd. Commrs.* (1990) 69 Ohio App.3d 789, 796, 591 N.E.2d 1287, 1292; *Rose v. Natl. Mut. Ins. Co.* (1999), 134 Ohio App.3d 229, 730 N.E.2d 1014. An abuse of discretion exists only where it is clear from the record that the court acted in a manner which was unreasonable, arbitrary, or unconscionable. *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 87, 19 OBR 123, 126–127, 482 N.E.2d 1248, 1251–1252. For an abuse of discretion to occur, "the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason, but rather of passion or bias." *Vanest, supra,* at 535, 706 N.E.2d at 832.

At issue here is the decision of the trial court's grant of appellees' Civ.R. 12(B)(6) motion asking the trial court to dismiss counts one, two, and three of the Second Amended Complaint on July 14, 1998. In resolving a Civ.R. 12(B)(6) motion to dismiss, a trial court may look only to the complaint to determine whether the allegations are legally sufficient to state a claim. *Hanson v. Guernsey Cty. Bd. of Commrs.* (1992), 65 Ohio St.3d 545, 548, 605 N.E.2d 378, 380–381. In addition, in order to grant a Civ.R. 12(B)(6) motion, it must appear beyond doubt that the plaintiffs can prove no set of facts warranting relief. *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 71 O.O.2d 223, 327 N.E.2d 753, at syllabus.

■ A Civ.R. 12(B)(6) motion to dismiss based upon a statute of limitations should be granted only where the complaint conclusively shows on its face that the action is so barred. *Velotta v. Petronzio Landscaping, Inc.* (1982), 69 Ohio St.2d 376, 379, 23 O.O.3d 346, 348, 433 N.E.2d 147, 150–151. To conclusively show that the action is time barred, the complaint must demonstrate both (1) the relevant statute of limitations, and (2) the absence of factors which would toll the statute, or make it inapplicable. *Tarry v. Fechko Excavating, Inc.* (Nov. 3, 1999), Lorain App. No. 98–CA–7180, unreported, 1999 WL 1037755.

A. Statute of Limitations for Breach of Contract

■ Appellants argue that count one should be governed by R.C. 2305.06, which states: "Except as provided in sections 126.301 and 1302.98 of the Revised

Code, an action upon a specialty or an agreement, contract, or promise in writing shall be brought within fifteen years after the cause thereof accrued."

Appellants maintain that the subscription agreements are written contracts and that the statute of limitations did not begin to run until the cause of action accrued. Thus, they argue that their cause of action did not accrue until 1996 when Prolong International Corp. stock became publicly traded and they did not receive the promised stock. Alternatively, appellants argue that R.C. 2305.07, the six-year statute of limitations for contracts not in writing, should apply. Appellants concede that the subscription agreements do not mention or even allude to a promise to deliver publicly traded shares. Appellants maintain that appellees made separate oral and written promises that they would eventually deliver shares in a publicly traded company. Appellants argue that even if the subscription agreements were partially oral contracts which would be governed by the shorter six-year statute of limitations for oral contracts, the cause of action for breach of the agreement did not accrue until 1996.

Appellees argue that count one is governed by the statute of limitations for securities fraud as found in R.C. 1707.43, which states:

"No action for the recovery of the purchase price as provided for in the section, and *no other action for any recovery based upon or arising out a sale or contract for sale made in violation of Chapter 1707. of the Revised Code,* shall be brought more than two years after the plaintiff knew, or had reason to know of the facts by reason of which the actions of the person or director were unlawful, or more than four years from the date of such sale or contract for sale, whichever is the shorter period." (Emphasis added.)

Appellees argue that R.C. 1707.43 applies to all claims arising out of or predicated upon the sale of securities, citing *Hater v. Gradison Div. of McDonald & Co.* (1995), 101 Ohio App.3d 99, 655 N.E.2d 189. In *Hater,* the plaintiffs were investors who had purchased shares in a limited partnership. After the financial collapse of the limited partnership, the investors filed a complaint alleging breach of contract, fraud, breach of fiduciary duty and violation of Ohio's "Blue Sky" security laws. The investors alleged that the defendant had fraudulently misrepresented the fair market value of the company and the value of notes owned by the company, and failed to disclose a loan that violated the partnership agreement. In spite of these allegations, the investors claimed that the fraudulent acts had no relationship to the sale of securities and that they were prosecuting their claims as *"owners* of the securities, not as *purchasers."* (Emphasis in original.) *Hater, supra,* at 112, 655 N.E.2d at 197

The court of appeals held that the contract and fraud claims were barred by R.C. 1707.43 because they arose from and were predicated upon the sale of securities. *Id.* at 113, 655 N.E.2d at 198. "[D]espite counsel's best efforts to

portray them as something else, the allegations of fraud are inextricably interwoven with the sale of the partnership units, and thus we hold that the trial court did not err when it found that they were controlled by the limitations period contained in R.C. 1707.43." *Id.*

A similar situation occurred in *Lynch v. Dean Witter Reynolds, Inc.* (1999), 134 Ohio App.3d 668, 731 N.E.2d 1205. A group of investors filed a class action complaint against Dean Witter alleging breach of an investment contract. The investors alleged that Dean Witter failed to make required disclosures, engaged in self-dealing, acted without due diligence and improperly managed investment accounts. The investors claimed that these acts did not fall within the scope of R.C. 1707.43 because they were alleging acts of mismanagement that occurred after the securities had been purchased and that the fifteen-year contract statute of limitations in R.C. 2305.06 should apply. The trial court granted Dean Witter's Civ.R. 12(B)(6) motion to dismiss the contract claim based on the strictures of R.C. 1707.43.

Here, too, the dismissal was upheld on appeal. The court acknowledged that an action for the unlawful sale of securities arising under R.C. Chapter 1707 is distinct from a common-law action for breach of a securities contract based on mismanagement. *Lynch, supra,* 134 Ohio App.3d at 670, 731 N.E.2d at 1207. The court held that it is the actual nature of the complaint, and not the form of the pleading, that determines which statute of limitations to apply. *Id.* The court also held that when two statutes of limitations could apply to a claim, the more specific statute governs. "[I]f the investors [*sic*] claims can be characterized both as violations of the specific provisions of R.C. Chapter 1707 and as breaches of their contracts with Dean Witter, the limitations period set forth in R.C. 1707.43 prevails over the general limitations period for breach of contract claims." *Id.*

 We hold that R.C. 1707.43 governs appellants' contract cause of action. Although appellants have attempted to avoid the application of R.C. 1707.43 by framing count one as a common-law contract action, we "must look to the actual nature or subject matter of the case, rather than the form in which an action is pleaded, to determine the applicable limitations period." *Lawyers Coop. Publishing Co. v. Muething* (1992), 65 Ohio St.3d 273, 277, 603 N.E.2d 969, 973.

Appellants' Second Amended Complaint alleges that (1) appellants paid for stock subscriptions in Prolong Industries, Inc. between 1985–1987, (2) appellees gave assurances that at some future date appellants would receive publicly traded shares of stock, (3) appellees deceived and defrauded appellants in that they never intended to deliver any type of stock certificates to appellants, (4) appellees fraudulently represented to appellants the relationship of the Prolong Group of companies, (5) appellants were induced to purchase their stock subscriptions based on appellees' fraudulent representations, (6) appellees were not authorized

to sell stock in Ohio, and (7) appellees have refused appellants' demands to deliver stock certificates. Appellants' prayer for relief included damages, specific performance of the subscription agreements, and any other legal or equitable relief available.

R.C. 1707.44 states:

"(B) No person shall knowingly make or cause to be made any false representation concerning a material and relevant fact, in any oral statement or in any prospectus, circular, description, application, or written statement, for any of the following purposes:

" * * *

"(4) Selling securities in this state.

" * * *

"(E) No person with intent to aid in the sale of any securities on behalf of the issuer, shall knowingly make any representation not authorized by such issuer or at material variance with statements and documents filed with the division by such issuer.

" * * *

"(G) No person in selling securities shall knowingly engage in any act or practice which is, in sections 1707.01 to 1707.45 of the Revised Code, declared illegal, defined as fraudulent, or prohibited.

" * * *

"(J) No person, with purpose to deceive, shall make, issue, publish, or cause to be made, issued or published any statement or advertisement as to the value of securities, or as to alleged facts affecting the value of securities, or as to the financial condition of any issuer of securities, when such person knows that such statement or advertisement is false in any material respect.

"(K) No person, with purpose to deceive, shall make, record, or publish or cause to be made, recorded, or published, a report of any transaction in securities which is false in any material respect."

Appellants' complaint alleges multiple violations of R.C. Chapter 1707 in conjunction with their contract claim. Regardless of whether appellants would have to prove that appellees violated a specific provision of R.C. Chapter 1707, their claim is still based upon and inextricably interwoven with a fraudulent sale of securities. Therefore, the statute of limitations in R.C. 1707.43 applies to appellants' cause of action sounding in contract. *Hater, supra,* at 113, 655 N.E.2d at 198; *Lynch, supra,* 134 Ohio App.3d at 672–673, 731 N.E.2d at 1208; *Ohio v. Stambaugh* (June 12, 1998), Montgomery App. No. 97CA96, unreported,

1998 WL 309236; *Kondrat v. Morris* (1997), 118 Ohio App.3d 198, 205, 692 N.E.2d 246, 251.

In further support of this holding, it is settled that specific statutory provisions prevail over conflicting general provisions unless the legislature's intent that the general prevail is clear. R.C. 1.51; *State v. Volpe* (1988), 38 Ohio St.3d 191, 527 N.E.2d 818, paragraph one of syllabus; *Koncsol v. Niles* (1995), 105 Ohio App.3d 535, 664 N.E.2d 616; *Lynch, supra.* Even though appellants' contract claim can be partially characterized as a common-law breach-of-contract claim, it overlaps with the allegations of violations of R.C. Chapter 1707. In such a situation the more specific statute of limitations in R.C. 1707.43 prevails.

Appellants attempt to argue that R.C. 1707.43 is not meant to replace the remedies provided by common-law contract actions, but was intended to merely supplement such remedies. Appellants cite R.C. 1707.40, which states: "Sections 1707.01 to 1707.45, inclusive of the Revised Code create no new civil liabilities, and do not limit or restrict common law liabilities for deception or fraud *other than as specified in* sections 1707.41, 1707.42 and 1707.43 of the Revised Code * * *". (Emphasis added.) Contrary to appellants' claims as to this matter, a plain reading of R.C. 1707.40 indicates that common-law remedies are governed by the statute of limitations provided in R.C. 1707.43.

█ Appellants next maintain that the relevant point in time for determining when their cause of action accrued is when Prolong International Corp. began to be publicly traded in 1996, and not the period between 1985–1987 when the subscription agreements were executed. Appellants' argument is not persuasive. R.C. 1707.43 requires plaintiffs to bring an action either two years from the time they knew, or had reason to know, of the facts underlying their complaint, or four years, "from the date of such sale or contract for sale, whichever is the shorter period." The record reflects that, using the four-year provision in the statute, the latest date on which appellants could have filed was 1991. Appellants filed their complaint on April 8, 1997, well over four years after the very latest date on which they entered into the preprimary share agreements. Therefore, based on this statute, it appears that appellants' contract cause of action would ordinarily be barred.

█ Our conclusion that R.C. 1707.43 governs count one of appellants' complaint does not result in the automatic dismissal of this claim. For dismissal to be appropriate, the record must also reflect that there are no factors which would toll the statute or make it inapplicable. *Tarry, supra,* Lorain App. No. 98–CA–7180, unreported. Appellants have alleged facts which could result in the application of the doctrine of equitable estoppel and prevent appellees from asserting the statute-of-limitations defense. Equitable estoppel precludes a party

from asserting certain facts where the party, by his conduct, has induced another to change his position in good-faith reliance upon that conduct. *State ex rel. Cities Serv. Oil Co. v. Orteca* (1980), 63 Ohio St.2d 295, 299, 17 O.O.3d 189, 191–192, 409 N.E.2d 1018, 1020–1021. The purpose of equitable estoppel is to prevent actual or constructive fraud and to promote the ends of justice. *Ohio State Bd. of Pharmacy v. Frantz* (1990), 51 Ohio St.3d 143, 145, 555 N.E.2d 630, 632–633.

Under Ohio law, the doctrine of equitable estoppel may be employed to prohibit the inequitable use of the statute of limitations. *Hutchinson v. Wenzke* (1999), 131 Ohio App.3d 613, 615, 723 N.E.2d 176, 177; *Walworth v. BP Oil Co.* (1996), 112 Ohio App.3d 340, 345, 678 N.E.2d 959, 962–963; *Schrader v. Gillette* (1988), 48 Ohio App.3d 181, 183, 549 N.E.2d 218, 220–221.

"A prima facie case for equitable estoppel requires a plaintiff to prove four elements: (1) that the defendant made a factual misrepresentation; (2) that it is misleading; (3) [that it induced] actual reliance which is reasonable and in good faith; and (4) [that the reliance caused] detriment to the relying party." *Doe v. Blue Cross/Blue Shield of Ohio* (1992), 79 Ohio App.3d 369, 379, 607 N.E.2d 492.

With regard to the first two elements set forth above, the Ohio Supreme Court has indicated that a showing of "actual or constructive fraud" is necessary. *State ex rel. Ryan v. State Teachers Retirement Sys.* (1994), 71 Ohio St.3d 362, 368, 643 N.E.2d 1122, 1127–1128. Furthermore, in the context of a statute-of-limitations defense, a plaintiff must show either "an affirmative statement that the statutory period to bring an action was larger than it actually was" or "promises to make a better settlement of the claim if plaintiff did not bring the threatened suit" or "similar representations or conduct" on defendant's part. *Cerney v. Norfolk & W. Ry. Co.* (1995), 104 Ohio App.3d 482, 488, 662 N.E.2d 827, 831. See, also, *Walworth v. BP Oil Co.* (1996), 112 Ohio App.3d 340, 678 N.E.2d 959.

The applicability of the doctrine of equitable estoppel is generally an issue to be determined by the trier of fact. *First Fed. S. & L. Assn of Toledo v. Perry's Landing, Inc.* (1983), 11 Ohio App.3d 135, 147, 11 OBR 215, 228–229, 463 N.E.2d 636, 649–650; see, also, *Patrick v. Painesville Commercial Properties, Inc.* (1997), 123 Ohio App.3d 575, 586, 704 N.E.2d 1249, 1255–1256. Appellants have alleged that on at least a dozen occasions defendants Ronald and Clifford Sloan reassured appellants that they would receive shares of stock. Appellants have alleged that appellee Elton Alderman was an investor and part owner of the Prolong Group of companies. Appellants have alleged that appellees EPL Prolong, Inc. and Prolong Super Lubricants, Inc. are successors in interest to Prolong Industries, Inc. Appellants alleged that appellees Elton Alderman,

Thomas Billstein, Thomas Kubota and Raymond Pratt were officers and significant shareholders of EPL Prolong, Inc. and Prolong Super Lubricants, Inc. It is for the trier of fact to determine whether the assurances made to appellants by the Sloans reasonably induced appellants to delay the filing of their claims until after the statute of limitations had run. Thus, dismissal on a statute of limitations basis was premature until these claims could be fully addressed, below.

It should be noted that any statements made by appellees and other defendants at Timberlanes Restaurant in 1993 were made after the statute of limitations found in R.C. 1707.43 had run. Thus, these statements cannot solely be used as the basis for an equitable estoppel argument. There remains, however, a question of material fact whether any defendants made fraudulent statements to appellants within the four years that the various appellants entered into the preprimary share agreements, whether such statements induced appellants to forgo their rights under the statute of limitations, and whether appellees are directly or indirectly liable for those statements.

Upon reviewing appellants' complaint and subsequent filings with the trial court, it appears that appellants have raised the issue of equitable estoppel sufficiently to overcome a dismissal under Civ.R. 12(B)(6). There is nothing in the record that indicates that the trial court considered whether appellees might be equitably estopped from asserting a statute-of-limitations defense. The dismissal of count one of the Second Amended Complaint is therefore reversed and remanded for said consideration.

B. Statute of Limitations for Fraudulent Conveyance

Count two of the complaint alleges that appellees fraudulently transferred assets in 1988–1989, 1995, and 1996 between the various Prolong companies in order to defeat appellants' rights under the preprimary share agreements. The parties do not dispute that count two is governed by the statute of limitations prescribed in R.C. 1336.09:

"A claim for relief with respect to a transfer or an obligation that is fraudulent under section 1336.04 or 1336.05 of the Revised Code is extinguished unless an action is brought in accordance with one of the following:

"(A) if the transfer or obligation is fraudulent under division (A)(1) of section 1336.04 of the Revised Code, *within four years after the transfer was made* or the obligation was incurred *or, if later, within one year after the transfer or obligation was or reasonably could have been discovered* by the claimant." (Emphasis added.)

R.C. 1336.04 states:

"(A) A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor, whether the claim of the creditor arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation in either of the following ways:

"(1) With actual intent to hinder, delay, or defraud any creditor of the debtor."

Appellants filed their initial complaint in April 1997. The alleged fraudulent transfers made in 1995 and 1996 fall within the four-year-limitations provision of R.C. 1336.09(A). Whether appellants discovered the 1988–1989 fraudulent transfers within the one-year limitations provision in R.C. 1336.09(A) is a material question of fact. A motion to dismiss based on the expiration of a statute of limitations is improperly granted where factual issues remain to be resolved as to the applicability of the statute. *Allis–Chalmers Credit Corp. v. Herbolt* (1984), 17 Ohio App.3d 230, 235, 17 OBR 496, 501–502, 479 N.E.2d 293, 299.

Appellants should be given an opportunity to prove that they discovered the 1988–1989 fraudulent transfers within one year of filing their initial complaint. Appellants' claims regarding the allegedly fraudulent transfers in 1995 and 1996 are not barred under the four-year provision of R.C. 1336.09(A). Therefore, appellant's arguments on this issue have merit and the dismissal of count two is hereby reversed and remanded.

C. Statute of Limitation for Breach of Fiduciary Duty

Count three of the Second Amended Complaint alleges that appellees breached fiduciary duties owed to appellants by transferring the assets of the various Prolong companies in such as way as to defeat appellants' rights under the preprimary share agreements. The transfers in question are presumably the same transfers at issue in count two that occurred in 1988–1989, 1995, and 1996. The parties agree that a claim of breach of fiduciary duty is governed by the statute of limitations in R.C. 2305.09(D), which states:

"An action for any of the following causes *shall be brought within four years after the cause thereof accrued:*

" * * *

"(C) For relief on the ground of fraud.

"(D) For an injury to the rights of the plaintiff not arising on contract nor enumerated in sections 2305.10 to 2305.12 2305.14 and 1304.35 of the Revised Code. If the action is for trespassing under ground or injury to mines, or for the wrongful taking of personal property, the causes thereof *shall not accrue* until the wrongdoer is discovered; nor, if it is for fraud, *until the fraud is discovered.*" (Emphasis added.) See, also, *Kondrat v. Morris, supra,* 118 Ohio App.3d at 207,

692 N.E.2d at 251–252; *Crosby v. Beam* (1992), 83 Ohio App.3d 501, 509, 615 N.E.2d 294, 299–300.

■ Appellees cite *Investors REIT One v. Jacobs* (1989), 46 Ohio St.3d 176, 546 N.E.2d 206, to support their contention that, under R.C. 2305.09(D), a breach-of-fiduciary-duty claim accrues when the act or commission constituting the breach occurs, rather than when the breach is discovered. *Investors REIT One* involved claims of negligence, fraud, and breach of fiduciary duties against the accountants, trustees, and attorneys of two real estate investment trusts. One of the issues before the Supreme Court was whether the "discovery rule" in R.C. 2305.09(D) applied to claims of professional malpractice, negligence and breach of trust. *Id.* at 179, 546 N.E.2d at 209. "The 'discovery rule' generally provides that a cause of action accrues for purposes of the governing statute of limitations at the time when the plaintiff discovers or, in the exercise of reasonable care, should have discovered the complained of injury." *Id.*

The Supreme Court held that "[t]he legislature's express inclusion of a discovery rule for certain torts arising under R.C. 2305.09, including fraud and conversion, implies the exclusion of other torts arising under the statute." *Investors REIT, supra,* at 181, 546 N.E.2d at 211.

This court interpreted *Investors REIT* to mean that a claim for breach of fiduciary duty accrues when the act or commission constituting the breach of fiduciary duty actually occurs and that the "discovery rule" does not apply to these claims. *Hirschl v. Evans* (Mar. 27, 1996), Mahoning App. No. 94CA43, unreported, 1996 WL 146090; see, also, *Hater, supra,* 101 Ohio App.3d at 110, 655 N.E.2d at 196; *Kondrat v. Morris, supra,* 118 Ohio App.3d at 207, 692 N.E.2d at 251–252. "[T]o find that appellant's [breach-of-fiduciary-duty claim] arose when he suffered his loss would be, on this court's part, an unlegislated adoption of the discovery rule in instances not specifically set forth in R.C. 2305.09, an approach specifically rejected by the Supreme Court in *Investors REIT One*". *Hirschl, supra,* at *3.

Appellants filed their initial complaint on April 8, 1997. Any act or commission constituting a breach of fiduciary duty that occurred more than four years prior to the filing of the initial complaint is barred by R.C. 2305.09(D). Appellants' claims for breach of fiduciary duty which allegedly occurred in 1988–1989 are therefore time-barred by R.C. 2305.09(D). However, the claims for breach of fiduciary duty that allegedly occurred in 1995 and 1996 are not barred by the statute of limitations. Therefore, the dismissal of count two is hereby reversed and remanded with respect to the 1995 and 1996 claims and sustained as to any alleged breaches of this duty occurring prior to April 8, 1993.

## AMENDMENT OF COMPLAINT

Appellants' second assignment of error alleges:

"The trial court erred in its 12/4/98 judgment entry insofar as it overruled plaintiffs' motion to reconsider the court's 10/16/98 judgment entry denying plaintiffs' motion to amend their complaint adding new parties pursuant to Rule 15 of the O.R.C.P.

"I. The claims plaintiffs sought to add were not barred by the statutes of limitations as a matter of law."

In their second assignment of error, appellants are again appealing the denial of a motion for reconsideration. Appellants requested reconsideration of the denial of a motion to amend their complaint for the fourth time. The standard of review of a denial of motion for interlocutory reconsideration is, as previously stated, an abuse-of-discretion standard. *Vanest v. Pillsbury, supra,* 124 Ohio App.3d at 535, 706 N.E.2d at 831–832.

Civ.R. 15(A) states:

"(A) Amendments

"A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within twenty-eight days after it is served. *Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party. Leave of court shall be freely given when justice so requires.*" (Emphasis added.)

Appellants argue that Civ.R. 15(A) reflects a policy that favors the amendment of complaints. Appellants cite *Hoover v. Sumlin* in support, which states:

"[T]he decision whether to grant a motion for leave to amend a pleading under Civ.R. 15(A) is within the discretion of the trial court. However, the language of Civ.R. 15(A) favors a liberal amendment policy and a motion for leave to amend should be granted absent a finding of bad faith, undue delay or undue prejudice to the opposing party. See *Foman [v. Davis], supra,* 371 U.S. [178] at 182, 83 S.Ct. [227] at 230 [9 L.Ed.2d 222]. See, also, *Roth Steel Products v. Sharon Steel Corp.* (C.A.6, 1983), 705 F.2d 134, 154. In adopting this rule, we follow the direction of 'innumerable' cases interpreting Fed.R.Civ.P. 15. 6 Wright & Miller, Federal Practice and Procedure, supra, at 417, Section 1484." *Hoover v. Sumlin,* (1984), 12 Ohio St.3d 1, 6, 12 OBR 1, 5–6, 465 N.E.2d at 381; see, also, *Turner v. Cent. Local School Dist.* (1999), 85 Ohio St.3d 95, 99, 706 N.E.2d 1261.

Appellants contend that their September 24, 1998 motion to amend was their first attempt to amend the complaint. The record before us flatly contradicts

appellants' contention. Appellants' initial complaint was filed on April 8, 1997. The case was then removed to federal district court. Appellants allege that they were ordered by the court to amend their complaint after it had been removed, but there is nothing in the record indicating such an order. It is clear from the record that appellants did amend their complaint on September 29, 1997, in federal district court, although this amended complaint is not part of the record. The case was then remanded to the Columbiana County Court of Common Pleas. On May 7, 1998, appellants filed a Second Amended Complaint in the court of common pleas.

On June 11, 1998, appellants filed a motion to amend their complaint a third time. The trial court allowed the amendment. The court's June 11, 1998 judgment entry stated that "[t]he court will grant to the plaintiffs a final opportunity to amend their complaint. The continued filing of amended Complaints is presently causing a delay in discovery." (6/11/98 Judgment Entry, at 1.) The trial court noted that the amended complaint had narrowed the issues in the case but warned appellants that any future attempts to amend this complaint would be closely scrutinized.

On June 18, 1998, appellants filed a motion to withdraw the complaint they had filed only seven days earlier. This motion was granted.

On September 24, 1998, appellants filed their fourth motion to amend. The October 16, 1998 judgment entry cites as reasons for denying the motion that (1) plaintiffs were attempting to reassert already dismissed claims, (2) the case had been pending on the court's docket for an "extraordinary period of time", (3) that was the fourth attempt at amending the complaint, (4) discovery would have to be reopened, which would be detrimental to the defendants, (5) the trial date and the date for the close of discovery had been previously postponed, and (6) the fairness required by Civ.R. 15 in liberally allowing amended complaints was outweighed by the unfairness to the defendants in further delaying trial. In the trial court's December 4, 1998 judgment entry denying appellants' motion for reconsideration, the court restated many of the reasons used in the October 16, 1998 ruling as reasons for denying the motion for reconsideration.

In considering a plaintiff's request for leave to amend, a trial court's "primary consideration is whether there is actual prejudice to the defendants because of the delay." *Schweizer v. Riverside Methodist Hosp.* (1996), 108 Ohio App.3d 539, 546, 671 N.E.2d 312, 316. A plaintiff must also make "at least a prima facie showing that the movant can marshal support for the new matters sought to be pleaded, and that the amendment is not simply a delaying tactic, nor one which would cause prejudice to the defendant." *Wilmington Steel Products* (1991), 60 Ohio St.3d 120, 122, 573 N.E.2d 622, 625. The trial court made a finding of both undue prejudice to the defendants and undue delay. The court

also found that appellants were merely reasserting claims that had been previously dismissed. The detailed reasons given by the trial court in its October 16, 1998 and December 4, 1998 rulings indicate that there was no abuse of discretion in denying appellants' motion for reconsideration.

## CONCLUSION

Based on the foregoing analysis, appellants' first assignment of error is granted in part and denied in part. The dismissals of counts one and two of the May 7, 1998 Second Amended Complaint are reversed and remanded. The dismissal of count three is sustained as to the claims of breach of fiduciary duty that occurred prior to April 8, 1993, and reversed and remanded on all other claims of breach of fiduciary duty. Appellants' second assignment of error is overruled, and the decision of the trial court denying appellants' motion to amend their complaint is affirmed in full. Appellees' motion to dismiss certain identified plaintiffs-appellants from the appeal is granted with respect to the forty-seven appellants named in sections one and two of the December 21, 1998 judgment entry of the Court of Common Pleas of Columbiana County.

*Judgment accordingly.*

VUKOVICH and GENE DONOFRIO, JJ., concur.