[Cite as *In re G.T.*, 2024-Ohio-4489.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| IN RE G.T. | : | |
| | | No. 113519 |
| Minor Child | : | |
| | | |
| [Appeal by Father] | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** September 12, 2024

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. CU09109676

***Appearances:***

V.T., *pro se.*

KATHLEEN ANN KEOUGH, A.J.:

{¶ 1} Appellant-Father appeals from the juvenile court's judgment granting Mother's motion to modify custody of the parties' minor child, G.T., and denying Father's motions for immediate return of the child and to show cause. We affirm.

## I. Background

{¶ 2} On June 15, 2009, Father and Mother, who never married, entered into a mediated shared parenting plan in which they agreed to share the rights and responsibilities of raising G.T. *See In re G.J.-R.T.,* 2015-Ohio-611, ¶ 3 (8th Dist.).

The parents' relationship deteriorated soon after the agreement was signed. *Id.* at ¶ 4. The shared parenting plan was modified on June 8, 2011, *id.* at ¶ 5, and it was terminated on January 31, 2016, when the juvenile court entered an order that continued both parents as G.T.'s legal custodian during their respective parenting times, designated Father as the residential parent for school purposes, and established an alternating weekend visitation schedule for Mother.

{¶ 3} On March 18, 2021, Father filed a motion to modify parenting time. After a hearing on February 18, 2022, the juvenile court granted Father's motion in part. The court found that it was in G.T.'s best interests that the January 31, 2016 order remain in effect to the extent it designated both parents as legal custodians and Father as the residential parent for school purposes. But the court modified Mother's parenting time to allow G.T. to be returned at 5:30 p.m. at the conclusion of Sunday parenting time and ordered that Mother's relatives be allowed to pick up and drop off G.T. without interference from Father. The court also ordered that Father engage G.T. in mental health counseling without delay.[1]

{¶ 4} On November 7, 2022, K.H., a maternal aunt of G.T., filed a motion to intervene and a motion for residential custody of G.T. in light of allegations that Father had sexually abused G.T. The same day, G.T.'s brother, C.D., and her sister, C.T., filed motions for emergency temporary custody of G.T. C.F., G.T.'s cousin, also filed a motion to intervene and a motion for temporary emergency custody of G.T.

---

[1] Curiously, the journal entry reflecting the court's order regarding the February 18, 2022 hearing was signed on November 23, 2022, and journalized on November 28, 2022.

{¶ 5} Also on November 7, 2022, Father filed a motion to show cause against Mother because she had not returned G.T. to him after visitation on November 6, 2022. On November 14, 2022, he filed a petition for a writ of habeas corpus and a motion for immediate return of G.T., alleging that Mother was interfering with his custodial rights by not returning G.T. to him.

{¶ 6} On November 30, 2022, after a hearing, the juvenile court denied the motions for temporary custody filed by G.T.'s siblings C.D. and C.T. because they were not parties to the matter and had not moved to intervene. The court granted the motion to intervene filed by G.T.'s aunt, K.H. It granted leave to C.F. to consult an attorney and held his motions to intervene and for temporary emergency custody in abeyance. The court also ordered that it would conduct an in camera interview of G.T. before ruling on Father's petition for a writ of habeas corpus and motion for immediate return of G.T. It also referred the matter to the court's diagnostic clinic for a custody evaluation and ordered Mother and Father to attend all appointments with the clinic.

{¶ 7} On December 7, 2022, following an in camera interview of G.T. and a hearing on Father's motion for immediate return of the child and petition for a writ of habeas corpus, the juvenile court found that G.T. was not returned to Father's home following weekend parenting time with Mother on November 6, 2022, because G.T. had made "certain disclosures" to Mother and other family members that triggered a referral and investigation by the Cuyahoga County Division of Children and Family Services ("CCDCFS"). The court found that although

CCDCFS's report indicated no substantiated cause for abuse or removal of the child, G.T. had remained in Mother's care since that time because she did not want to return to Father's home, preferred the support of Mother's family, and wanted to return to public school and other social activities.

{¶ 8} The juvenile court found that G.T.'s return to Father's home was not in her best interest at that time, pending completion of the custody evaluation by the court's diagnostic clinic, and ordered that Mother would have temporary sole custody of G.T. pending further order of the court. The court denied Father's petition for a writ of habeas corpus and held Father's motion for immediate return of G.T. in abeyance pending further order of the court.

{¶ 9} On May 3, 2023, the court held a hearing regarding the pending motions. The court terminated the referral to the court's diagnostic clinic due to Father's lack of participation. It ordered that Mother continue to have temporary sole custody of G.T. and designated her as the residential parent for school purposes. It also ordered Mother to enroll G.T. in school and engage her with mental health services.

{¶ 10} In July 2023, Mother filed a motion to modify custody, asserting that G.T. had been in her home since November 2022, was receiving counseling that had improved her self-esteem and development, and was of an age (15 years old) where she could decide for herself which parent she wanted to live with. The trial court set the matter for trial.

{¶ 11} On November 28, 2023, after a trial on Mother's motion to modify custody and Father's pending motions, the juvenile court found that a change of circumstances had occurred since the prior decree and that modification of the decree was necessary to serve G.T.'s best interests. In its journal entry, the court outlined the statutory factors for modifying custody that it had considered in making its decision, as well as other factors relating to G.T.'s best interest, including that

> [f]ollowing the child's refusal to return to Father's home in November 2022, and [the] order of temporary custody to Mother, Mother engaged in a parenting class and enrolled herself and the child in counseling. The child has been engaged in individual counseling since November 2022, is enrolled in public school, and participating in extracurricular activities such as Junior ROTC and making friends. Mother has made efforts to grow personally and recognizes the parent-child conflict that exists between the child and Father. She would support family counseling.

> The Court finds that the child continued to be isolated under the care of Father. When asked by the Court whom the child goes out with socially, Father responded, "we go out," with no one else joining them. The GAL supports the child's desire to return to the primary care of Mother to meet her changing needs as a teenager, and further ending the shared parenting plan of the parties as it has been ineffective to strengthen the co-parenting relation[ship] or improve communication and decision-making between the parties when they did communicate. Despite Father's primary parenting efforts for more than a year beginning [in] the fall of 2021, the child desires to return to Mother's care; and Mother has demonstrated a willingness to provide for the child's needs in such a way to serve her best interests. Father failed to show by a preponderance of the evidence that Mother denied his parenting time or intentionally interfered or alienated the child from a relationship with her father. The refusal to parenting time or return to the home appear to be the actions of the child; and although the Court referred this matter to the court's Diagnostic Clinic for evaluation and opinion, Father refused to participate and complete the evaluation.

{¶ 12} Accordingly, "upon due consideration of the evidence and the recommendation of the GAL," the juvenile court found that it was in G.T.'s best

interests that Mother be designated as the residential parent and legal custodian of G.T., including as the residential parent for school purposes. The court ordered that Father have ongoing contact and access to G.T. through weekly phone calls and text messaging on Wednesday evenings between 7:00 and 8:00 p.m., and that Father could have supervised parenting time with G.T. by agreement of the parties and G.T. The court also ordered that G.T. continue with individual counseling and that Mother arrange family counseling for Father and G.T. with G.T.'s counselor.

{¶ 13} The juvenile court accordingly granted Mother's motion to modify custody and denied Father's motions for immediate return of the child and to show cause.[2] Father now appeals pro se from the juvenile's court's judgment.

## II. Law and Analysis

{¶ 14} At the beginning of his appellate brief, Father lists three assignments of error for our review. In his first assignment of error, Father contends that the juvenile court abused its discretion by denying his motion to modify custody and granting residential custody to Mother. In his second assignment of error, Father contends that the November 28, 2023 journal entry incorrectly states that the shared parenting agreement was modified on February 18, 2022. And in his third assignment of error, Father contends that the juvenile court "made errors," "misused its authority," and "did not act in the child's best interests" by granting Mother's motion to modify custody and designating her the residential parent and

---

[2] The court also dismissed C.F.'s motions to intervene and for temporary custody and K.H.'s motion to modify custody.

legal custodian of G.T. and the residential parent for school purposes. The assignments of error are followed by 28 pages of what is captioned "Facts and Procedural History," and then a "Conclusion" section that asks this court to "consider these facts" and reverse the juvenile court's judgment.

{¶ 15} Father's brief does not comply with the Ohio Rules of Appellate Procedure because he fails to argue each assignment of error separately, as required by App.R. 16(A)(7). In *Cook v. Wilson*, 2006-Ohio-234 (10th Dist.), the Tenth District stated:

> The purpose behind the rule is to require the appellant to specifically identify the error the appellant claims occurred and the portion of the record that supports the claim of error. Courts of appeals "cannot and will not search the record in order to make argument on appellant's behalf." *Helman v. EPL Prolong, Inc.*, 139 Ohio App.3d 231, 240, 2000-Ohio-2593 (7th Dist.).

*Id.* at ¶ 15.

{¶ 16} App.R. 16(A)(7) requires a separate argument for each assignment of error. Although Father sets forth three assignments of error in the first few pages of his brief, he fails to separately identify and argue each assignment of error in the rest of the brief. Instead, the lengthy "Facts and Procedural History" section of Father's brief consists of various intertwined arguments and conclusory allegations, without any indication as to how the arguments pertain to each assignment of error. Under App.R. 12(A)(2), an appellate court "may disregard an assignment of error presented for review if the party raising it . . . fails to argue the assignment separately in the brief, as required under App.R. 16(A)." *See Guerry v. Guerry,* 2001 Ohio App.

LEXIS 4567, *2 (8th Dist. Oct. 11, 2001); *In re P.C.*, 2021-Ohio-1238, ¶ 94 (3d Dist.); *Cook* at ¶ 17; *Mtge. Elec. Registrations Sys. v. Mullins*, 2015-Ohio-2303, ¶ 22 (4th Dist.) (all finding that failure to argue assigned errors separately, as required by App.R. 16, is grounds for summary affirmance). Accordingly, in light of Father's failure to comply with the applicable rules, we exercise our discretion and summarily affirm the juvenile court's judgment.

{¶ 17} It makes no difference that Father is proceeding pro se. It is well-established that "pro se litigants are held to the same rules, procedures, and standards as litigants represented by counsel." *DJL, Inc. v. Massingille*, 2011-Ohio-6281, ¶ 23 (8th Dist.), and a litigant proceeding pro se can neither expect nor demand special treatment. *Kessler v. Kessler*, 2010-Ohio-2369, ¶ 8 (10th Dist.). A pro se litigant is not given greater rights than represented parties and must bear the consequences of his mistakes. *Helms v. Furman*, 2016-Ohio-5810, ¶ 7 (9th Dist.).

{¶ 18} Judgment affirmed.

It is ordered that appellant shall pay the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

KATHLEEN ANN KEOUGH, ADMINISTRATIVE JUDGE

EMANUELLA D. GROVES, J., and
MARY J. BOYLE, J., CONCUR